**Lorraine LONGMOOR, and Lyndsey Keene, plaintiffs,**

v.

**Karl NILSEN, Michael Fox, Town of Barkhamsted, Barkhamsted Inland Wetlands Commission, Trooper David Laboy, Trooper Hazen, Trooper Sweeney, and Lt. Tolomeo, Defendants.**

No. 3:02 CV 1595(JBA).

United States District Court, D. Connecticut.

Aug. 6, 2004.

John R. Williams, Katrena K. Engstrom, Williams & Pattis, New Haven, CT, for Plaintiff.

James Newhall Tallberg, Updike, Kelly & Spellacy, P.C., Stephen Richard Sarnoski, Attorney General's Office, Jason J. Vicente, Wendy Kennedy Venoit, Pepe & Hazard, Hartford, CT, for Defendants.

Ruling on Motion for Summary Judgment of Defendants Karl Nilsen, Michael Fox, Town of Barkhamsted, and Barkhamsted Inland Wetlands Commission [Doc. # 72]

ARTERTON, District Judge.

Defendants Nilsen, Fox, Town of Barkhamsted, and the Barkhamsted Inland Wetlands Commission (the "Barkhamsted Defendants") move pursuant to Fed. R.Civ.P. 56 for summary judgment against plaintiffs' four remaining claims: violations of equal protection, substantive due process, and procedural due process under the Fourteenth Amendment to the United States Constitution brought pursuant to 42 U.S.C. § 1983, and common law claim of intentional infliction of emotional distress. In opposition, plaintiffs withdraw their procedural due process and intentional infliction claims, see Opp'n [Doc. # 77] at 1 nn. 1 & 2, and do not address the challenge to their substantive due process claim and do not include it in their listing of remaining claims, see id. at 1. The Court deems plaintiff's substantive due process claim to be abandoned in the face of a summary judgment contention that there exists no evidence which would permit a jury to find "conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority...." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999).

What remains then is plaintiffs' equal protection claim. As set forth below, the Court concludes that no jury could find intentional and wholly irrational disparate treatment of plaintiffs by defendants and therefore defendants are entitled as a matter of law to summary judgment on the equal protection claim. In sum, defendants' motion [Doc. # 72] is GRANTED.

## I. Summary Judgment Facts

Plaintiff Lorraine Longmoor resides at 24 Woodland Acres Road in Barkhamsted, Connecticut, with her boyfriend, plaintiff Lyndsey Keene. Woodland Acres Road is a private dirt/gravel road that provides residents of the Woodland Acres Subdivision access to their adjoining properties and homes. The subdivision consists of 14 lots. The lots were sold beginning in 1969, when there were no zoning regulations in Barkhamsted. Lot buyers were required to obtain a pre-construction building permit and a post-construction certificate of occupancy. In 1972/1973, Longmoor purchased lots 6, 9, 10, and 11, property covering approximately eight contiguous acres, obtained a building permit, and ultimately moved into her home at 24 Woodland Acres Road. At that time, access to Longmoor's home was by way of an approximately 900 foot-long unimproved dirt and gravel road, Woodland Acres Road, which had been constructed by the subdivision developer, Burton Carroll.[1]

In the mid–1970s, Longmoor discovered that Woodland Acres Road had not been constructed entirely within the 50–foot wide published right of way depicted in the subdivision plot plan filed with Barkhamsted, but instead encroached onto her property and that of at least one other landowner in the subdivision. In 1981, David Knauf, a prospective buyer of subdivision lot 14, was having difficulty securing a mortgage for building a home due to encroachment of Woodland Acres Road off the published right of way onto a small portion of lot 14 where it abutted the road. To eliminate the encroachment problem,

---

1. The road is still owned by Carroll and has never been accepted by Barkhamsted as a public road.

Knauf asked Longmoor if she would accept a quitclaim deed to that portion of lot 14 re-designated as lot 14A. Longmoor, aware that Woodland Acres Road traversed lot 14A, agreed and accepted the quitclaim deed in exchange for $1.00. Knauf retained an easement to cross lot 14A. Lot 14A is not contiguous with Longmoor's other lots and is approximately one-tenth of an acre. As other lots in the subdivision were acquired and sold over the ensuing years, other subdivision residents crossed lot 14A to access their properties and homes.

In 1988, Longmoor had that portion of Woodland Acres Road encroaching on her property at lots 6, 9, and 10, moved onto the published right of way depicted in the subdivision plot plan filed with Barkhamsted. Longmoor did not obtain a permit to move the road and the project had no effect on lot 14A. Longmoor believed the other residents of the subdivision should have contributed to the cost of relocating the road to its originally intended location, and planned to use her quitclaim deed to lot 14A to force their reimbursement. Also in 1988, the O'Garas, owners of lot 5, requested an easement from Longmoor to cross lot 14A. Longmoor did not grant the easement but gave permission to the O'Garas to cross the property. In addition, Longmoor believed Richard Case, owner of lot 13, had "prescriptive rights" to use lot 14A by virtue of having crossed over it for thirty years and, when Case sold lot 13 to Wayne Gracie and Tracy Garafolo, gave the purchasers oral permission to use Woodland Acres Road over lot 14A.

In 1998, Longmoor asked the O'Garas to pay for an easement to lot 14A but the O'Garas declined. In March 2000, Longmoor met with the other landowners and residents of the subdivision to discuss their acquisition of easements from her to lot 14A. No easements resulted from this meeting but Longmoor did execute a written agreements with neighbors William Langer and Kevin and T. Chandler O'Gara agreeing to grant and sign easements in exchange for their making improvements to Woodland Acres Road. No easements were ever granted to Langer and O'Gara.

On March 21, 2000, Langer applied to the Zoning Enforcement Officer[2] in Barkhamsted for a permit to build a home on lot 2 of the subdivision, which is located across Woodland Acres Road from property owned by Longmoor. As with all previous applicants who had built homes in the subdivision, the Zoning Enforcement Officer granted Langer's permit application. The permit issued on April 4, 2000 and Langer immediately began construction. In the same month, on advice from her attorney, Longmoor erected two posts and a chain across Woodland Acres Road at lot 14A blocking vehicular access into the subdivision. The posts and chain gave rise to a series of disputes with neighbors, including Langer, involving state police but none of the Barkhamsted Defendants were involved in those disputes.

On May 9, 2000, Longmoor wrote defendant Karl Nilsen, Barkhamsted's Zoning Enforcement Officer and Inland Wetlands Officer, complaining that excavation and construction occurring on Langer's property were not completely protected by a siltation fence or hay bails in violation of zoning and wetlands regulations and were causing runoff from Langer's property to drain under Woodland Acres Road into a pond on Longmoor's property. Longmoor requested immediate enforcement of the regulations against Langer "before a rain storm causes erosion and siltation contaminating [her] pond." On May 11, 2000,

---

**2.** This individual is not identified in the record.

Longmoor sent Nilsen a second letter stating her pond was full of silt after heavy rains the night before, acknowledging awareness that a silt fence had been installed on Langer's property,[3] surmising that another source of silt must exist if the fence was performing effectively, and requesting immediate investigation. In response, on May 11,[4] Nilsen conducted an inspection of Longmoor's property, including her pond, and did not find any evidence of siltation coming from Langer's property.[5] Nilsen also inspected the construction site on Langer's property and was unable to trace any siltation to it. On May 15, 2000, Nilsen wrote Longmoor informing her that he had found no evidence of siltation at Langer's construction site and was unable to trace any to Longmoor's pond. Longmoor then complained to the Connecticut Department of Environmental Protection ("DEP") about the alleged siltation problem. DEP investigator Brian Golembieski responded and conducted an inspection of Longmoor's pond. Mr. Golembieski concurred with Nilsen, finding no wetlands violations caused by Langer's construction.

On May 19, 2000, Longmoor sent a letter to defendant Michael Fox, First Selectman and Open Burn Official of Barkhamsted, requesting a cease and desist order on all construction occurring on Langer's property because of runoff water depositing silt onto Longmoor's property, including into her pond and lot 14A, as exacerbated by the heavy construction equipment moving along Woodland Acres Road. It is undisputed, however, that Fox had and has no authority as First Selectman to issue cease and desist orders in response to complaints like Longmoor's. On June 6, 2000, Longmoor sent a follow up letter to Nilsen, reiterating her request for a cease and desist order on grounds of runoff as exacerbated by erosion caused by heavy equipment and adding that Langer had been trespassing across lot 14A as a result of his building permit. On June 14, 2000, Longmoor sent Nilsen another letter, requesting that Barkhamsted consider requiring a permit for work on Woodland Acres Road pursuant to Conn. Gen.Stat. §§ 22a–14–22a–20, 22a–36–22a–45 and reasons for any denial of the request. The letter provides no details or information identifying the nature of any work or who was going to perform it.[6] On June 27,

3. It appears from Longmoor's own testimony that Nilsen had delivered a copy of Longmoor's May 9 letter to Langer with an order to address the siltation fence problem. Longmoor Depo. at 392:11–393:18.

4. The record does not reveal how Nilsen received Longmoor's letter on the same day she sent it. However, this fact is undisputed.

5. Longmoor's deposition testimony is that there was siltation all over her property and that it would have been "perfectly visible" for anyone to see. Longmoor admits, however, that the source of it was obscured since she saw it coming from Langer's property during a rain storm and that, when Nilsen arrived, the rains had stopped and with them the flow pointing to Langer's property as source. See Longmoor Depo. at 343:11–19 ("I physically saw that when it was raining. When Mr. Nilsen came, it was not raining. So, there-

fore, he did not see sediment and silt coming from Mr. Langer's driveway crossing the road and going onto my property. He saw only some signs of erosion on the road which had existed for some time and maybe was surmising that all this siltation and sediment that was on my property was coming from the road.").

6. Although very vague, Longmoor appears to indicate that this letter was intended to inform Barkhamsted officials that her neighbors were planning to relocate Woodland Acres Road away from lot 14A to its originally intended location without the required wetlands permit and in doing so were going to destroy an intermittent watercourse and use unauthorized toxic materials to build a new road. See Longmoor Depo. at 430:1–439:22; see also Keene Depo. at 209:24–213:25; Am. Compl. [Doc. # 31] ¶ 9G. The neighbors eventually

2000, Nilsen replied to Longmoor's June 6 and June 14 letters. Nilsen informed Longmoor that he found no violations of Barkhamsted's zoning or wetlands regulations in connection with Langer's construction and that the DEP had concurred with Nilsen's findings after independent inspection.[7] In addition, Nilsen informed Longmoor that his inspection of lot 14A revealed disrepair and significant erosion and that she should submit reconstruction plans for it to the Planning and Zoning Office of Barkhamsted by July 11, 2000. Nilsen had received complaints in mid-June from Kevin O'Gara and William Langer charging Longmoor with clear cutting and logging in the subdivision causing siltation and encroachment on wetlands and failing to maintain lot 14A with attendant siltation in adjacent areas. Longmoor hired an engineer after receiving Nilsen's request, concluded that erosion on lot 14A was not her fault, and therefore did not submit a reconstruction plan.[8] Notwithstanding Longmoor's non-compliance, Nilsen took no enforcement action against her with respect to the erosion and concluded that her tree-cutting was solely on her property and therefore within her right to do.[9]

Langer completed construction by early July 2000 and received a final certificate of occupancy from the Zoning Enforcement Officer [10] on July 19, 2000. On August 17, 2000, Longmoor filed an appeal with the Zoning Board of Appeals in Barkhamsted, contending that the certificate of occupancy should not have issued because access

did relocate the road in July 2001. There is nothing in Longmoor's letter that even suggests these possible events. Moreover, there is nothing in either Longmoor's or Keene's deposition testimony from which a jury could conclude that any named defendant agreed with Longmoor's and Keene's conclusory allegations that the relocation violated wetlands laws. Keene refers to a complaint about the relocation he lodged with a Guy Morin of the Barkhamsted Inland Wetlands Commission prior to the relocation complaining about the possibility of imminent construction of the road but provides no other details regarding the contents of the complaint or that it charged the planned relocation was a violation of wetlands regulations. *See generally* Keene Depo. at 172:13–175:12; 198–208. Keene also admits Morin responded to his letter, cryptically describing the response as indicating no action could be taken without an "application," *see* Keene Depo. at 208, which suggests, among other things, that Morin took no view as to the possibility of a violation. Similarly, while Keene provided extremely vague testimony that "possibly a DEP official may verbally have said, 'Yes, that's a water course'," Keene Depo. at 206:7–8, there is no evidence that such communication was relayed to any named defendant. This allegedly illegal diversion of an intermittent watercourse is the subject of a state lawsuit brought by Longmoor against Langer, Zappula, and others pursuant to Conn. Gen.Stat. § 22a–44(c), which allows for full litigation over whether or not certain activities were in fact wetlands violations. *See Keene v. Langer,* No. CV020088105S, 2003 WL 964249 (Conn.Super.Feb.26, 2003); *see also* Keene Depo. at 213:15.

7.  It is unknown whether Nilsen conducted a second inspection or was referring to his original May 11 inspection.

8.  Longmoor says her engineer produced a report for her concluding that any erosion on lot 14A was the result of water coming from upland to lot 14A. Longmoor Depo. at 354:12–355:3. There is no evidence in the record that this report was supplied to Nilsen or any other defendant or that this report suggested any violation associated with the source of the water.

9.  Nilsen also received complaints from neighbors Kevin O'Gara, Richard Zappulla, and Carl Zappulla in mid-June and early July 2000 charging Longmoor with operating a boarding house and having catered parties on her residence in violation of zoning regulations. Nilsen took no action with respect to these complaints.

10.  This person is not identified as Nilsen in the record.

to Langer's property required trespassing over Longmoor's lot 14A. The appeal was heard on November 29, 2000 and denied on December 6, 2000 on the grounds that the original transfer of lot 14A to Longmoor from Knauf was improper [11] and Longmoor's appeal was untimely as not brought within 30 days of issuance of Langer's construction permit as Longmoor was aware of the construction. Longmoor appealed to Connecticut Superior Court, which ultimately affirmed (albeit on different grounds) [12] the zoning board's decision and the validity of Langer's certificate of occupancy.

On September 7, 2000, Longmoor submitted an Open Burning Application to Barkhamsted, requesting permission to burn several piles of brush at 24 Woodland Acres. Fox inspected Longmoor's burn piles and noticed inclusion of items larger than permitted for permitted burning. He asked Longmoor to remove one stump and

Longmoor said she would burn in small piles and be careful. Fox signed and approved the permit. Fox's actions in this regard were consistent with the normal execution of his duties as Open Burn Official, including regular on-site inspection of piles after receipt of an open burn application.[13]

In early October 2000, Nilsen learned Longmoor had dug a ditch across her lawn to the edge of a wetland bog adjacent to her property. On October 10, 2000, Nilsen sent Longmoor a cease and desist order, stating that Longmoor had performed a regulated activity without a permit in violation of inland wetlands regulations and ordering Longmoor to appear before the Barkhamsted Inland Wetlands Commission and provide an explanation regarding the nature of the work she had performed and why she had done so without a permit. Longmoor responded to the letter and made a presentation before the Commis-

11. There are several allegations in Longmoor's Local Rule 56(a)2. Statement to the effect that the Barkhamsted Defendants clearly knew neighbors were trespassing on lot 14A and yet did nothing to prevent the trespasses even though asked to do so. However, Longmoor has not provided any evidence that defendants knew that trespass was occurring or, as would be required to raise a material issue of fact on disparate treatment, that other Barkhamsted residents in similar situations to Longmoor were treated differently. Longmoor also offers no evidence that the Barkhamsted defendants had any jurisdiction to respond to complaints of trespass. Rejection of Longmoor's appeal on the grounds of improper transfer of lot 14A suggests Barkhamsted did not recognize the property as belonging to Longmoor because it had been transferred in violation of zoning laws such that no trespass resulted from neighbors' passage over it.

12. See Longmoor v. Zoning Board of Appeals of the Town of Barkhamsted, No. CV010084128S, 2002 WL 31235446 (Conn.Super.Aug.30, 2002).

13. Longmoor testified in her deposition that "everybody who comes to the town hall takes a burning permit out, and they do not have their proposed piles inspected." Longmoor Depo. at 267:15–18, 278:17. Longmoor, however, provides no basis for personal knowledge for her statement, including how she would know whether Fox routinely inspected burn piles or instances she knows of in which an inspection was not done, see e.g. id. at 253:12–15 ("I believe that he had never done that before when other people had come to the office to get a burning permit."), and in fact admitted lack of personal knowledge, see id. at 268:24–269:7 (Q.... And you don't know whether Mr. Fox had ever gone out and taken a look at a burn pile before it was burned; isn't that correct? A. Right Q. Because you haven't traveled with Mr. Fox on his duties so you don't know if he had ever gone out and examined other burn piles; is that correct? A. Correct.). Moreover, there are no burn permit applications in the record other than Longmoor's for comparison to determine whether there was a substantive basis for distinguishing between applications triggering on-site inspection and those not.

sion, after which Nilsen took no further action.[14]

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where, as here, a party moves for summary judgment against claims on which the non-moving party bears the burden of proof at trial, the moving party still shoulders the initial responsibility to inform the district court of the basis for its motion, namely, to identify those portions of the court or discovery record together with affidavits, if any, believed to demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then go beyond the pleadings and by her own affidavits, or by evidentiary support found in the court or discovery record, designate specific facts establishing a genuine issue of material fact on any element essential to the non-moving party's case that was sufficiently called into question by the moving party. *See id.*. The "District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177,

111 L.Ed.2d 695 (1990), mindful that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The District Court's ultimate concern is "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## III. Discussion

■ For Longmoor's class of one § 1983 equal protection claim under *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)(per curiam) to survive summary judgment, there must be evidence from which a jury could conclude the Barkhamsted Defendants intentionally selectively treated Longmoor compared with other similarly situated individuals and at a minimum that such selective treatment was irrational and wholly arbitrary (if not also occasioned by subjective ill will). *See Cobb v. Pozzi*, 363 F.3d 89, 109–10 (2d Cir.2004); *Harlen Assoc. v. Incorporated Village of Mineola*, 273 F.3d 494, 499–500 (2d Cir. 2001); *see also Hayut v. State University of New York*, 352 F.3d 733, 754 n. 15 (2d Cir.2003); *DeMuria v. Hawkes*, 328 F.3d 704, 707 and n. 2 (2003); *Giordano v. City*

---

14. In her Local Rule 56(a)2. Statement, Longmoor alleges that the cease and desist order constituted a retroactive application of regulations against Longmoor that had never been done to any other Barkhamsted resident. The deposition testimony cited in support of the allegation, *see* Longmoor Depo. 407:20–410:16, however, neither provides evidence of Barkhamsted's prior practices with respect to retroactive application of wetlands regula-

tions nor any evidence that the defendants were aware that the regulation at issue did not apply to Longmoor when the cease and desist order issued. While Longmoor claims the applied regulation was adopted after issuance of the cease and desist order, the supporting evidence to which she points reveals it was adopted by September 26, 2000, approximately two weeks prior to issuance of the October 10 cease and desist order.

*of New York*, 274 F.3d 740, 751 (2d Cir. 2001).[15] Longmoor claims the Barkhamsted Defendants intentionally ignored Longmoor's complaints but entertained and investigated those of her neighbors, enforced wetlands and zoning regulations against Longmoor but not her neighbors, and permitted trespasses on lot 14A by Longmoor's neighbors (and presumably, although Longmoor does not say, prevented such trespasses in other similar situations). *See* Opp'n [Doc. # 77] at 6 (unnumbered). There is no evidence to support a jury finding for Longmoor on such claims.

In response to Longmoor's May 9 letter, Nilsen apparently ordered Langer to install a silt fence and Langer did so. In response to Longmoor's May 11 letter, Nilsen conducted a full same day on-site investigation of Longmoor's and Langer's properties and saw no evidence that siltation was flowing from Langer's property to Longmoor's, a finding admitted by Longmoor and confirmed by DEP. Longmoor reiterated essentially the same complaints by letters of June 6 and 14 of 2000, and Nilsen provided a written reply on June 27. By contrast, Nilsen ignored neighbor complaints regarding Longmoor running a boarding house and catering parties, and only acted on neighbor complaints made in mid-June 2000 about erosion on lot 14A that were consistent with what Nilsen already knew from his earlier on-site verification at Longmoor's property. In fact, there is no evidence that Nilsen even responded to the mid-June complaints of O'Gara and Langer. Clearly, with respect to filed complaints, there is no evidence that the named defendants treated Longmoor different than anyone else.[16]

Regarding application of regulations, Nilsen required Longmoor to submit a reconstruction plan only after on-site verification of erosion regarding which Longmoor herself admits it would have been reasonable for Nilsen to have believed was lot 14A's problem. Nilsen took no action against Langer's property after his site visit because, contrary to the situation on lot 14A, he found no violations, a finding uncontradicted in the record and confirmed by DEP. Similarly, Nilsen's issuance of a cease and desist order to Longmoor followed Nilsen's learning of Longmoor's having dug a ditch near a wetland bog. Upon finding a perceived wetland violation, Nilsen took action, requiring Longmoor to explain her actions to the Commission. There is no evidence offered that Nilsen did not believe a true violation to exist or that Nilsen ignored other similar situations. To the contrary, Nilsen's taking action upon belief of an erosion violation to exist is consistent with the action taken in connection with Longmoor's ditch. Fox approved Longmoor's open burn application after evaluating it in the same manner he dealt with all such applications, and Longmoor offers no evidence to the contrary, either personal knowledge that he never conducted investigations for any other applications or that, if he did conduct on-site investigations for some applications, hers was similar to those for which Fox routinely did not. Finally, with respect to the neighbors' relocation of Woodland Acres Road away from lot 14A in July 2001, there is simply no evidence in the record regarding what any named defendant knew about the relocation, if they knew

---

**15.** The Barkhamsted Defendants do not dispute for purposes of the present motion that they acted under color of state law.

**16.** Fox made no response to Longmoor's May 19 letter but he had no authority to provide the relief requested, and there is no evidence in the record of similar complaints made to Fox or how he responded to them.

about it at all,[17] whether they agreed that the relocation was a wetlands violation, or what was in Keene's complaint to Morin such that one could compare it to other complaints to gage any disparity of official action in response. In sum, there is simply no evidence to support the conclusion that the Barkhamsted Defendants enforced regulations against Longmoor or Keene and not against similarly situated individuals.

Finally, there is no evidence that any of the named defendants had authority to prevent trespasses over Longmoor's lot 14A, believed any such trespasses were occurring on any property of Longmoor's, or had responded differently to similar complaints of other residents. Thus, there could be no jury finding of disparate treatment in Longmoor's favor with respect to her claims of trespass.

## IV. Conclusion

As set forth above, defendants' motion [Doc. # 72] is GRANTED. All claims having been dismissed or disposed of on motion for summary judgment, *see* Rulings [Docs.## 65, 80, 85], the clerk is directed to enter judgment in favor of all nine defendants and close this case.

IT IS SO ORDERED.

---

17. There is evidence in Keene's deposition that Fox knew about plans for the relocation and even may have attempted to assist it but no evidence that he perceived it to be a wetlands violation, received complaints about it, or had any authority to order the relocation plans to stop if he had believed there to be a wetlands violation.