Lindell **HARVEY**, Plaintiff,

v.

Kathy **MARK** and City of Hartford, Hartford Public Schools, Defendants.

No. 3:02CV1086(DJS).

United States District Court, D. Connecticut.

Jan. 20, 2005.

Francis A. Miniter, Miniter & Associates, Hartford, CT, for Plaintiff.

Joseph W. McQuade, Kainen, Escalera & McHale, PC, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION

SQUATRITO, District Judge.

On June 18, 2002, plaintiff Lindell Harvey filed this action alleging that defendants, Kathy Mark and the City of Hartford, Hartford Public Schools, his alleged employer,[1] discriminated against him on the basis of his sex, in violation of Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.[2] On May 30, 2003, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, defendants filed a motion for summary judgment. (*See* Dkt. # 36). For the reasons set forth herein, defendants' motion is **GRANTED**.

### I. FACTS

Since 1989 through at least the date the papers pertaining to the pending motion were filed, Mr. Lindell Harvey was a cus-

---

1. Harvey seeks to join the State Board of Trustees for the Hartford Public Schools as a defendant in this matter. In a separate order issued herewith, Harvey's motion is denied because his substantive claims against the agents of the responsible principal, whether it is the City of Hartford or the State Board of Trustees for the Hartford Public Schools, lack merit.

2. Harvey has withdrawn the Third and Fifth claims for relief set forth in the complaint.

todian in the Hartford public school system. Ms. Kathy Mark, since 1995 through at least the date the papers pertaining to the pending motion were filed, was the Head Custodian of Bulkeley High School, which is a school in the Hartford public school system. The City of Hartford is a municipality in the State of Connecticut.

This lawsuit concerns Harvey's tenure as Night Lead Custodian at Bulkeley High School, which began on April 28, 1997 and ended on or about August 16, 2001. During this time, Mark supervised Harvey, who in turn supervised about nine employees during the 3:00 p.m. through 11:00 p.m. shift. Harvey was the only supervisor present after 4:00 p.m., which is when the day shift ended.

According to Mark, Harvey's job performance began to deteriorate in 1999. The record contains several memoranda, dated from October of 1998 through October of 2000, from Mark to Harvey relating faculty complaints and detailing problems with the manner in which Harvey was performing his duties. On a yearly performance evaluation dated June 12, 2000, Mark noted that Harvey failed to meet expectations with respect to the quality of his work, his knowledge or expertise, and his dependability. On July 18, 2000, Raymond DelMonte, the Custodial Manager for the school district, and Gerard Rivera, the Custodial Supervisor for the school district, met with Harvey to discuss his performance evaluation and scheduled him for re-evaluation in thirty, sixty, and ninety day increments.

Thereafter, according to Mark, Harvey's performance did not significantly improve. Throughout the ninety-day re-evaluation period, Mark continued to note that Harvey failed to meet expectations with respect to the quality of his work, his knowledge or expertise, and his dependability. On February 5, 2001, DelMonte stated his dissatisfaction with Harvey's job perform-

ance and referred Harvey to the human resources department for disciplinary action. On August 16, 2001, following a pre-disciplinary hearing, Robert Stacy, the Executive Director for Human Resources, demoted Harvey to the position of Custodian and transferred Harvey to a different school.

## II. DISCUSSION

Harvey alleges that defendants demoted him in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. The factual basis for Harvey's claims is that Mark treated the male custodians in her charge, including Harvey, poorly compared to the female custodians. Harvey claims that Mark's criticism of his work was unjustly harsh and was a product of her animosity towards men in general and Harvey specifically.

### A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if, after discovery, the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). A dispute concerning a material fact is genuine " 'if evi-

dence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. DISCRIMINATION CLAIM

Harvey alleges that defendants discriminated against him on the basis of his sex. Specifically, Harvey claims that Marks was unfairly critical of his work because he is a man, and that Mark's critical view of his job performance was adopted by those who ultimately disciplined him. Defendants claim that Harvey's job performance was in fact poor, and that Harvey has not offered any evidence of discriminatory intent on the part of any defendant. Because Harvey has not offered sufficient evidence to create a genuine issue of material fact, defendants' motion for summary judgment on Harvey's discrimination claim is granted.

In *McDonnell Douglas Corporation v. Green,* the Supreme Court established an "allocation of the burden of production and an order for the presentation of proof in Title VII cases." 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, a plaintiff alleging a violation of the federal anti-discrimination statutes establishes a prima facie case by showing he: (1) was a member of a pro-

tected class; (2) was qualified for the position he held; (3) suffered an adverse employment action; (4) in circumstances giving rise to an inference of discrimination. *See Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000); *see also Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."). If the plaintiff establishes a prima facie case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. *Stern v. Trustees of Columbia University,* 131 F.3d 305, 312 (2d Cir.1997). If the employer does so, the plaintiff must prove by a preponderance of the evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was unlawful discrimination. *See id.*

Harvey cannot, as a matter of law, establish that defendants' actions were the product of unlawful discrimination.[3] The ultimate question in an employment discrimination case is whether the evidence offered can reasonably and logically give rise to an inference of discrimination under all of the circumstances. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Bickerstaff v. Vassar College,* 196 F.3d 435, 448 (2d Cir.1999). Where the plaintiff's evidence barely establishes a prima facie case, the prima

---

**3.** Defendants also contend that Harvey was not qualified to hold his position, and therefore cannot even establish a prima facie case of discrimination. The court does not find for the defendants on this ground. Because Harvey's burden when attempting to make out a prima facie case is *de minimis, see McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817, the court cannot find that, as a matter of law, Harvey has failed to establish that he was qualified to hold the position of Lead Night Custodian.

facie case alone may not be sufficient to prove that it is more likely than not that discrimination, not defendant's proffered explanation, was the true motivation for the adverse employment action. *See Reeves*, 530 U.S. at 148, 120 S.Ct. 2097 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."); *Stern*, 131 F.3d at 312.

 Defendants have offered substantial evidence that Harvey's employment was terminated because of performance issues. Defendants' offer of proof in this regard significantly weakens the persuasive effect of Harvey's prima facie case. An individual is qualified for purposes of establishing a prima facie case when the employee's performance meets the employer's legitimate expectations. *See Thornley v. Penton Publishing*, 104 F.3d 26, 29 (2d Cir.1997); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). A plaintiff's "job performance cannot be assessed in a vacuum; the ultimate inquiry is whether [the] performance 'meets his employer's legitimate expectations.'" *Meiri*, 759 F.2d at 995. The record contains enough evidence to at least suggest that Harvey was an incompetent supervisor during the relevant time period, which limits the persuasive effect of his prima facie offer of proof when weighed against defendants' proffered reason for his demotion. *Cf. Mandell v. Suffolk County*, 316 F.3d 368, 381 (2d Cir.2003) (reversing grant of summary judgment in favor of the employer when the employer's non-discriminatory proffer was vague and unsubstantiated).

Harvey's evidence in support of his discrimination claim is insufficient to prove illegal discrimination. In support of his claim that defendants' proffered reason for his demotion was a pretext for discrimination, Harvey attempts to prove that Mark harbored a bias against men in general, and that this bias prompted her to unfairly scrutinize his work. As evidence of Mark's bias, Harvey offers the following evidence: (1) the fact that his written performance reviews were satisfactory or better prior to arriving at and subsequent to leaving Bulkeley High School; (2) the fact that Mark assigned "unequal workloads and burdened the male employees with unreasonable and oppressive job assignments in a an effort to portray them as poor workers," (dkt. # 45 ¶ 9); (3) his observation that Mark "treats men more harshly than she treats women, and that performance was not a relevant basis for such treatment," (*id.* ¶ 10); (4) memoranda to Mark and DelMonte disputing Mark's criticisms of his performance; and (5) statements by two of his male co-workers that they "feel that Ms. Mark discriminated against [us] and the other male employees because we are male," (*id.*, Ex. 8, Malave Aff. ¶ 6; *see id.*, Holton Aff. ¶ 6). These statements are conclusory in that they simply state the speaker's belief that Mark treated men differently. No example, save a vague reference in Malave's affidavit to an incident where Mark instructed a female employee not to do an assignment allegedly because the employee was a woman, is provided about how Mark divided the workload in a discriminatory fashion between men and women. Harvey has not provided any basis to conclude that Mark's motivation for criticizing Harvey was the fact that Harvey was a man. As such, there is no evidence in the record for a factfinder to conclude that Mark's criticism of Harvey's work was the product of sex discrimination, and summary judgment must enter for the defendants on this claim.

### C. EQUAL PROTECTION

Harvey argues that defendants violated his right to equal protection under the law

by "intend[ing] to deprive Plaintiffs of his rights, privileges and immunities under federal law on the basis of his gender," (Compl.¶ 25), and that "Defendants acted in pursuance of a systematic custom or policy of discriminating against or harassing male members of the Hartford Public School System," (*id.* ¶ 27). Harvey's claim fails as a matter of law because he has not provided sufficient evidence in support of his claim.

The Fourteenth Amendment to the United States Constitution provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A plaintiff claiming denial of equal protection rights can proceed according to several theories:

A plaintiff could point to a law or policy that "expressly classifies persons on the basis of race." [*Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir.1999) ] (citing *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 213, 227–29, 115 S.Ct. 2097, 132 L.Ed.2d 158 ... (1995)). Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. *See Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220, 6... (1886). A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Brown v. City of Oneonta, New York,* 221 F.3d 329, 337 (2d Cir.2000). Further, the United States Supreme Court has recently held that a plaintiff need not be a member of a traditionally "protected class" in order to allege an equal protection violation. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Instead, a "class of one" may maintain an equal protection claim, as long as the plaintiff alleges that he or she was treated differently than similarly situated persons. *See id.* In addition, the plaintiff must show that the different treatment was intentional and had no rational basis in order to properly allege an equal protection violation. *See, e.g., Ricketts v. City of Hartford,* 74 F.3d 1397, 1407 (2d Cir. 1996).[4] A government official's decision "can be considered irrational only when [the official] acts with no legitimate reason for [his or her] decision." *Harlen Associates v. The Incorporated Village of Mineola,* 273 F.3d 494, 500 (2d Cir.2001) (internal quotation marks omitted).

■ Under either of the two theories that could possibly fit the evidence offered,[5] Harvey cannot prevail on his equal protection claim. With respect to a selective prosecution theory,

To succeed in an action alleging selective prosecution, plaintiffs in this Circuit ["]have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional

---

**4.** Prior to *Olech,* the Court of Appeals also required the plaintiff to show malice or bad faith on the part of the defendant in a selective treatment case. *See Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001). In light of *Olech,* however, it is unclear whether intentional conduct may be sufficient alone to satisfy an equal protection claim.

*See id.* For the purpose of deciding this motion, the court assumes that intentional conduct is sufficient to state an equal protection claim.

**5.** Harvey does not specify a theory upon which he wishes to proceed.

rights, or malicious or bad faith intent to injure a person.["]

*Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir. 2004) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001)). To the extent Harvey is proceeding under an *Olech* theory, Harvey must show that he was intentionally treated differently from similarly situated individuals and that the basis for this treatment was irrational, although not based on an impermissible classification. Harvey cannot prove that he was treated differently from similarly situated individuals, which is essential to prevailing on either theory.[6] Harvey was a supervisor of about nine employees; the record does not offer any evidence as to how Mark treated a female supervisor. Further, on a more generic level, the record only contains conclusory statements regarding Mark's treatment of male custodians compared to her treatment of female custodians. Therefore, Harvey cannot show that defendants, either because of his sex or simply without any rational basis, treated him differently than other similarly situated employees.[7]

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (dkt.# 36) is **GRANTED.** Judgment for the defendants shall enter on all counts of the complaint. The Clerk of the Court shall close this file.

---

6. To the extent Harvey proceeds on a selective prosecution theory, his claim also fails because he cannot prove intentional discrimination, as stated previously herein.

7. Because the court finds that Mark, or any other individual in the employ of the City of Hartford, did not violate the U.S. Constitution, and Harvey's claims against the City of Hartford, or any other purported principal of the agents named in this lawsuit, are derivative of the claims against the agents, Harvey's claims against the City of Hartford fail. To the extent his claims are not derivative of the agents' conduct, Harvey has offered absolutely no evidence in support of his claims, which must necessarily fail.