**HARLEN ASSOCIATES,**
**Plaintiff–Appellant,**

v.

**The INCORPORATED VILLAGE OF MINEOLA and Board of Trustees for the Incorporated Village of Mineola, Defendants–Appellees.**

**Docket No. 01–7039.**

United States Court of Appeals, Second Circuit.

Argued Aug. 29, 2001.

Decided Nov. 16, 2001.

Carl S. Levine, Roslyn, NY (Alexander M. Amanatides, Carl S. Levine & Associates, Roslyn, NY, of counsel), for Appellant.

Christopher P. Cartier, Albertson, NY (Ahmuty, Demers & McManus, Albertson, NY, of counsel), for Appellee.

Before: MESKILL, WINTER and STRAUB, Circuit Judges.

MESKILL, Circuit Judge.

Plaintiff-appellant, Harlen Associates (Harlen), brought this action pursuant to 42 U.S.C. § 1983 against defendants-appellees, the Incorporated Village of Mineola (Village) and its Board of Trustees (Board), alleging that the Board's denial of a special use permit to operate a convenience store was unconstitutional. The United States District Court for the Eastern District of New York, Mishler, *J.*, granted defendants-appellees' motion for summary judgment and dismissed the action. Harlen contends that the Board's denial of the special use permit was unconstitutional under the Fourteenth Amendment to the United States Constitution[1] because it violated (1) its right to equal protection under the law by denying its

permit application based on community opposition while granting permits to similarly situated stores in the Village, and (2) its right to due process by denying its application after it had been properly filed with the Village Building Inspector. We find no merit in Harlen's contentions and we affirm.

## BACKGROUND

Harlen is a partnership that owns real property located on Jericho Turnpike in Mineola, New York. Jericho Turnpike is the main thoroughfare through the Village of Mineola and has traffic volume of approximately 33,500 cars per day. Before Harlen acquired ownership of the property at issue, the parcel had been used as a gasoline service station/automobile repair shop. Three schools are located in the immediate vicinity of Harlen's property.

Harlen planned to operate a 7-Eleven convenience store on the property. That use was not permitted by the zoning code absent a special use permit from the Village. The Village Zoning Law vests discretion in the Board to deny applications for special use permits for a number of reasons, including traffic, safety and aesthetic concerns. The Board has permitted more than five other convenience stores to operate on Jericho Turnpike in Mineola, although none of them is as close to the area schools as is Harlen's property.

---

1. Harlen also raised a claim under the Equal Protection Clause of the New York State Constitution in its complaint. Ordinarily, we would be obliged to address any state constitutional claims before reaching the merits of Harlen's federal constitutional claims. *Allstate Ins. Co. v. Serio,* 261 F.3d 143, 150 (2d Cir.2001) (noting that "where possible, courts will render decisions on federal constitutional questions unnecessary by resolving cases on the basis of state law (whether statutory or constitutional)"). Here, however, Harlen

concededly has abandoned its state law claim and failed to elaborate on it beyond a bare assertion in its complaint. *See Maska U.S. v. Kansa Gen. Ins. Co.,* 198 F.3d 74, 79–80 (2d Cir.1999). Consequently, we decline to address Harlen's state constitutional claim in this appeal. *See Booking v. General Star Mgmt. Co.,* 254 F.3d 414, 418–19 & n. 4 (2d Cir.2001) (noting that appeals court has broad discretion to decide whether to address issues not argued before the district court).

In 1998, Harlen properly filed an application for a special use permit to build a 7–Eleven convenience store on its property. The Board subsequently held a public hearing concerning Harlen's application. At the hearing, Harlen presented evidence in support of its application, including expert testimony, a letter indicating the permit history of the property, photographs, prior Board decisions granting special use permits to allegedly similar establishments on Jericho Turnpike and a partial copy of a 1991 Nassau County Department of Engineering traffic flow map for the property and the surrounding area. No comparable documentary evidence was presented in opposition to the application.

At the hearing, the Board members—including the Village's Mayor who lived on the block where Harlen's property was located—expressed concern about child safety and trepidation about the site's proximity to three schools and its location alongside "one of the most dangerous crosswalks in the Village of Mineola." The Board members also noted that a convenience store could attract children from the surrounding schools who would congregate there, thereby increasing the risk of an accident.

The hearing was then opened to public comment and a number of community residents voiced their disapproval of the proposed use of the property for a variety of reasons, most prominently traffic density and child safety. Some residents also expressed a desire to limit further development, concern regarding the hours of operation and potential clientele, and a fear that convenience stores might attract drug activity and other crimes.

At the conclusion of the hearing, the Board voted 5–0 to deny Harlen's application. On May 26, 1998, the Board filed a formal written decision. The decision cited nine reasons for the denial, including the proximity of the property to a number of local schools, increased traffic, the potential threat to child safety, intrusion on the surrounding residential area and an increased danger to pedestrians generally. After the formal decision was entered, Harlen brought this action in district court under 42 U.S.C. § 1983 alleging that the Board had violated its rights to equal protection and substantive due process granted by the United States Constitution.

The defendants moved for summary judgment, claiming that there was no material issue of fact in dispute and that they were entitled to judgment as a matter of law. After considering Harlen's response, the district court granted summary judgment in favor of the defendants, holding, with respect to Harlen's equal protection claim, that Harlen had not raised a genuine issue of material fact as to either whether it was similarly situated to others who had been granted permits or whether the Board's actions were motivated by animus. It also dismissed Harlen's substantive due process claim, holding as a matter of law that Harlen had no constitutionally protected property interest in the permit sought. Harlen timely appealed. We affirm the judgment of the district court.

## DISCUSSION

■ We review a grant of summary judgment *de novo*. *Nora Beverages v. Perrier Group of Am.*, 164 F.3d 736, 742 (2d Cir.1998). A motion for summary judgment must be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine issue" exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor. *Nabisco v. Warner–Lam-*

*bert Co.,* 220 F.3d 43, 45 (2d Cir.2000). Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion. *Western World Ins. Co. v. Stack Oil,* 922 F.2d 118, 121 (2d Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that nonmoving party must do more than merely show "some metaphysical doubt" as to material facts to escape summary judgment). We examine each claim to see if summary judgment was appropriate.

## I. *The Equal Protection Claim*

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. *E.g., LeClair v. Saunders,* 627 F.2d 606, 608–10 (2d Cir.1980). The Supreme Court recently affirmed the validity of such "class of one" claims "where the plaintiff alleges

that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

Harlen does not assert membership in a protected class, rather it claims that the Board's denial of its application for a special use permit was unconstitutional selective enforcement. We disagree. To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on " 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *LaTrieste Rest. & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (quoting *LeClair,* 627 F.2d at 609–10). Because we conclude that Harlen's claim does not satisfy the second part of this inquiry, we affirm the district court's grant of summary judgment in favor of the defendants.[2]

Harlen contends that the Supreme Court's decision in *Olech* modified the second part of the *LeClair* analysis by removing the requirement that malice or bad faith be shown in order to state a

---

**2.** The district court concluded that Harlen's property was not similarly situated to that of the other convenience stores in the area because it was closer in proximity to the three schools than were the other convenience stores. As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury. *See, e. g., Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *Kirschner v. Zoning Bd. of Appeals of Valley Stream,* 924 F.Supp. 385,

394 (E.D.N.Y.1996) (holding that issue of whether two shops are similarly situated is "classic" issue of fact precluding summary judgment). This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met. *See, e. g., Cruz v. Coach Stores,* 202 F.3d 560, 568 (2d Cir.2000). Given the disposition of the second part of the *LeClair* inquiry, we need not reach the question of whether the district court's ruling on this issue was correct.

valid "class of one" equal protection claim. *See Olech,* 528 U.S. at 565, 120 S.Ct. 1073 (holding that allegations of "irrational and wholly arbitrary" government action are sufficient to state an equal protection claim without inquiry into the defendants' subjective motivation). Indeed, we recently indicated in *dicta* that this reading of *Olech* is the correct one. *Jackson v. Burke,* 256 F.3d 93, 97 (2d Cir.2001) (per curiam) (noting that "proof of subjective ill will is not an essential element of a 'class of one' equal protection claim"); *see also Gelb v. Board of Elections of New York,* 224 F.3d 149, 157 (2d Cir.2000) (noting, where plaintiff made no allegation of animus, that claim could survive summary judgment because "it may well be that the Board engaged in arbitrary, purposeful and intentional discrimination"). However, the district court and a number of our sister circuits have read *Olech* differently, holding that it did not remove the requirement that a plaintiff alleging an equal protection violation based on selective enforcement show that the governmental action at issue was motivated by personal animus. *E.g., Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir. 2000), *cert. denied,* 531 U.S. 1080, 121 S.Ct. 781, 148 L.Ed.2d 678 (2001); *Shipp v. McMahon,* 234 F.3d 907, 916 (5th Cir. 2000). We need not decide which reading is the correct one in order to resolve this case, as Harlen's claim fails even if no showing of animus is required.

If we assume *arguendo* that Harlen's assessment of *Olech's* impact is correct, a "class of one" plaintiff could survive a summary judgment motion by making one of two showings. He would be required to show either that there was no rational basis for the unequal treatment received, *see Olech,* 528 U.S. at 565, 120 S.Ct. 1073, or that the denial of the application was motivated by animus. Harlen has done neither.

■ A zoning board's decision can be considered irrational only when the board acts "with 'no legitimate reason for its decision.'" *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996) (quoting *Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 102 (2d Cir.1992)). The evidence presented by Harlen did not meet the requirements for such a showing. Both at the public hearing and in its written decision, the Board advanced a number of legitimate reasons for denying Harlen's permit application.

A review of the hearing transcript makes clear that foremost among the Board's reasons for denial of the permit was the close proximity of Harlen's property both to area schools and an extremely dangerous crosswalk. Protecting the safety of area schoolchildren is a legitimate goal. Further, it was not irrational for the Board to conclude that a convenience store would attract children from the schools closest to it, thereby increasing the risk of accidents as the children crossed heavily trafficked Jericho Turnpike. It bears repeating that Harlen's property was closer to the schools than were any of the convenience stores in the Village. That fact alone provided a rational basis for the Board's different treatment of Harlen's convenience store permit application. Therefore, Harlen cannot successfully maintain a "class of one" claim under the standard promulgated in *Olech.*

Harlen attacks the rationality of the Board's decision on primarily two grounds, both of which lack merit. Harlen's first argument is that the Board's conclusion had no basis in fact because the findings underlying it were not supported by written studies. From this, Harlen extrapolates that the Board's decision was based solely on what Harlen refers to as "NIMBY (Not In My Back Yard)" community opposition to the proposed development

and was, therefore, arbitrary and unconstitutional. The record does not support this conclusion.

The Board's failure to commission a written study prior to denying Harlen's special use permit does not by itself render its action arbitrary. To hold otherwise would impose severe and unnecessary financial and logistical burdens on local governments, as they would be required to commission written studies to provide cumulative support for facts that are evident to those with knowledge of the local community. The proximity of the three schools to the property was never questioned. Basing a decision on personal experience and observations of the surrounding community is not arbitrary as a matter of law. A decision can only be considered arbitrary for federal constitutional purposes where, unlike the one made here, it has no basis in fact.[3]

The members of the Board, before opening the meeting to public comment, set forth objections to the proposed development that had a foundation based on concrete and verifiable facts. Members of the Board noted that Harlen's property was "literally feet away from three schools in the community" and that the area was used extensively by children on their way to and from school. Again, the record conclusively establishes that Harlen's property was closer to all three schools than were any of the other convenience stores in the Village. In addition, a member characterized the crosswalk adjoining Harlen's property as "the number one worst crossing for children in all of Mineola" and others expressed their belief that placing a convenience store there would be dangerous. Harlen provided no evidence to rebut these assertions, nor did it show that any other convenience stores in the Village shared these characteristics. Thus, the Board had a reasonable basis for its belief that placing a convenience store on Harlen's property posed unique problems and hazards to the community not posed by other similar stores in the area.

Despite the factual support for the Board's reasoning, Harlen contends that the Board in fact arbitrarily denied its permit based solely on community opposition. Harlen's argument is severely weakened by the Board's setting forth ample support for its decision before entertaining any public comment. Its position remained unchanged after the public spoke against granting the application. Even if the Board's action were based solely on community opposition, such action would not be unconstitutionally arbitrary if the opposition is "based on legitimate state interests such as, *inter alia,* traffic, safety, crime, community pride, or noise." *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 685 (3d Cir.1991). The Board here apparently denied Harlen's application primarily for safety and traffic issues.

Harlen's second argument, which lies at the heart of its equal protection claim, is

---

**3.** There is a trend in the New York state courts holding that a lack of support in written studies or expert testimony renders a zoning board's decision subject to annulment as "arbitrary, capricious and an abuse of discretion" as a matter of state law. *See, e. g., Church of Jesus Christ of Latter–Day Saints v. Planning Bd. of Clifton Park,* 260 A.D.2d 769, 687 N.Y.S.2d 794, 794 (3d Dep't 1999) (affirming annulment of board's denial of special use permit where "[r]espondent offered no expert testimony to support its generalized claims of potential water and traffic problems"). That would provide support for Harlen were this a direct appeal from the denial of its application. This case, however, raises a federal constitutional claim. We decline to create by fiat a constitutional requirement that all zoning boards in this Circuit use expert testimony or written studies to support their decisions.

that the Board acted arbitrarily in denying its application because placing a 24–hour convenience store on the premises would have no greater impact on traffic and child safety than would other uses which are permitted as of right. Specifically, Harlen contends that the Board's decision was irrational because there is no evidence that the proposed 24–hour convenience store would impact child safety and traffic more than a dry cleaner's, which is permitted as of right, or a gas station/repair shop, which was the prior use of the premises.

We do not believe that it was arbitrary for the Board to conclude that children from nearby schools were more likely to walk to a convenience store than to a dry cleaner's or a gas station. The conclusion appears reasonable. Nor was it irrational for the Board to conclude that a convenience store would result in a greater increase in traffic given the nature of the business. In so holding, "we are mindful of the general proscription that 'federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies.'" *Zahra v. Town of Southold,* 48 F.3d 674, 679–80 (2d Cir.1995) (quoting *Sullivan v. Town of Salem,* 805 F.2d 81, 82 (2d Cir.1986) (alterations in *Zahra*)). Harlen's argument really addresses the merits of the Board's decision rather than its constitutionality and is better raised in a state court challenge. Local zoning boards, subject to direct oversight by state courts, are in a far better position than are the federal courts to balance the needs of their communities with those of individuals seeking development. *See Sullivan,* 805 F.2d at 82.

Even if the district court was correct in holding that *Olech* had no significant effect on the standard for selective enforcement cases, Harlen's claim could still survive a summary judgment motion if it could show that the Board's decision was motivated by an " 'intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *La-Trieste,* 40 F.3d at 590 (quoting *LeClair,* 627 F.2d at 609–10). Harlen does not argue that the denial of the special use permit was intended to inhibit or punish the exercise of its constitutional rights. Therefore, to prevail, it must show that the Board was motivated by a malicious intent to injure it.

■ Harlen advances three bases to support its claim of malicious intent: (1) community opposition to the proposed use, (2) Mayor Colbert's participation in the Board's consideration of the application while residing on the same street as Harlen's property, and (3) reasons given by the Board in its formal decision not mentioned in the Board's informal decision. Although the issue of whether an action was motivated by malice generally is a question of fact properly left to the jury, we will uphold a grant of summary judgment where the nonmoving party adduces nothing more than speculation to support its claims. *See, e. g., Lisa's Party City v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999) (affirming grant of summary judgment where "appellant's assertion that the Town enforced the ordinance against it with an impermissible motivation [was] sheer 'conjecture and speculation' "). We conclude that Harlen's claims are wholly speculative and, therefore, hold that summary judgment properly was granted here.

■ As a preliminary matter, we note that neither partner in Harlen Associates alleges that they had any personal conflicts with members of the Board or with Village officials. The entire claim of animus is based on the reaction of the Board and members of the community to their pro-

posal to build a 7–Eleven on their property. Enmity directed toward a business property use may not form the basis for a constitutional claim because equal protection rights vest in individuals rather than business activities. *See Shelley v. Kraemer*, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) ("The rights established [by the first section of the Fourteenth Amendment] are personal rights."). To the extent that the record reveals any hostility, it was directed at the proposed use of the property, not the owner, and therefore does not implicate the Equal Protection Clause.

In any event, there is insufficient evidence of malice for Harlen's equal protection claim to survive summary judgment. Harlen's contention that the Board's action was motivated by community animus against 7–Eleven to deny the application has no significant basis in fact. The record makes clear that the Board had signaled its decision to deny the permit based on child safety and traffic concerns well before any public comments were solicited. Beyond that, the bulk of the public comments were directed toward legitimate concerns of child safety and traffic density. *See Midnight Sessions*, 945 F.2d at 685. None of the public statements evinced personal animus toward Harlen, and only a small fraction of them were critical of 7–Eleven franchises generally.

Harlen's next basis for its animus claim is the Mayor's failure to recuse himself from participation in the hearing because he resides on the same block as the property at issue. While the Mayor might have recused himself, the record does not show and Harlen does not claim that the Mayor had a financial or family related interest in the application. The proximity to his residence alone is not a disqualifier. The office he holds does not eliminate his rights as a resident citizen to express his views. Also, as an elected official, the Mayor has an obligation to show concern for the safety of school children. As a Board member, the Mayor has an obligation to vote responsibly. Furthermore, the Mayor's vote only made the decision unanimous; his vote was not decisive. Therefore, the conflict of interest charge here does not suggest a constitutional violation.

Finally, we see no merit in Harlen's intimation that in drafting the Board's formal decision the Village Attorney fabricated reasons for its decision. Each of the reasons referenced in the formal decision was discussed by the Board at the hearing in varying degrees of detail. None of the proffered bases for Harlen's claim of animus rise above the level of speculation and conjecture and no reasonable jury could find that the Board's denial of Harlen's application was either irrational or motivated by constitutionally impermissible considerations. Therefore, we hold that Harlen cannot state a valid equal protection claim.

## II. *The Due Process Claim*

Harlen also claims that the Board's denial of its application for a special use permit violated its right to substantive due process. For such a claim to survive summary judgment, a plaintiff must show both (1) that he had a valid property interest in the granting of the permit, and (2) that the defendants infringed that property interest in an arbitrary or irrational manner. *Crowley*, 76 F.3d at 52. Harlen has not made a showing as to either of these requirements.

We apply a strict "entitlement test" in land use regulation cases to determine if the abridgement of an asserted property right is cognizable under the substantive component of the Due Process Clause. *DLC Mgmt. Corp. v. Town of*

*Hyde Park,* 163 F.3d 124, 130 (2d Cir. 1998). This analysis focuses on whether the entity asserting the property right has a "legitimate claim of entitlement" to have its application granted. *Zahra,* 48 F.3d at 680 (quoting *RRI Realty Corp. v. Incorporated Vill. of Southampton,* 870 F.2d 911, 915 (2d Cir.1989)). A "legitimate claim of entitlement" exists where, under applicable state law, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Walz v. Town of Smithtown,* 46 F.3d 162, 168 (2d Cir. 1995) (quoting *Yale Auto Parts v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985)). As a general rule, "entitlement turns on whether the issuing authority lacks discretion to deny the permit, *i.e.,* is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999).

■■■ Harlen claims that it had a constitutionally protected property right to the granting of the special use permit because both New York and municipal law mandate that the Board grant the permit once the application requirements are met. This argument misstates the law and would lead to ridiculous results. Under New York law, the Board has the power to grant and deny special use permits within its " 'untrammeled, but of course not capricious discretion ... with which courts may interfere only when it is clear that the Board has acted solely upon grounds which as a matter of law may not control.' " *Retail Prop. Trust v. Board of Zoning Appeals of Hempstead,* 281 A.D.2d 549, 722 N.Y.S.2d 244, 246 (2d Dep't 2001) (quoting *Cummings v. Town Bd. of N. Castle,* 62 N.Y.2d 833, 835, 477 N.Y.S.2d 607, 466 N.E.2d 147 (1984)).

In addition, the Village's Zoning Law vests considerable discretion in the Board

with respect to granting special use permits. It provides that the Board, "after notice and public hearing, *may* issue special use permits ... after considering the ... [enumerated] general standards as applied to a specific application." Mineola, N.Y., Zoning Law § 30.104(A) (emphasis added). Among other things, the Board must consider "[w]hether the proposed use will be hazardous ... by reason of excessive traffic, assembly of persons or vehicles or proximity to travel routes or congregations of children, pedestrians or others." *Id.* at § 30.104(A)(4). Although Village law requires that the Board consider certain standards, the ultimate decision as to whether to grant a special use permit conclusively lies with the Board.

Harlen argues that this broad discretion is rendered nugatory because it filed a valid application for the special use permit. It contends that once a valid application is filed, the Board must grant the permit subject only to the imposition of reasonable conditions. This argument is untenable. It would make the Board nothing more than a rubber stamp and reduce its role in the process to a rote check of whether the proper filings had been made. Such a result is diametrically opposed to the intent of the Village in drafting its zoning law to give the Board discretion and the duty to protect the interests of the community.

The cases Harlen cites do not strengthen its argument. Each of them involved a situation where local officials were required by law to grant the permit if the application was properly filed. *See Walz,* 46 F.3d at 168 (Town Code stated that "[u]pon compliance with the foregoing requirements, a permit shall be issued"); *Sullivan,* 805 F.2d at 85 (Connecticut law provided that there was no discretion if houses met requirements). The law at

issue in our case is different. As noted, the Village Board is vested with significant discretion to deny applications even after proper filings have been made. The presence of that discretion precludes any legitimate claim of entitlement by Harlen. Therefore, Harlen's due process claim must fail. *See Crowley,* 76 F.3d at 52 (holding that no property right existed where Board had discretion similar to that here).

Harlen also fails to satisfy the second part of the due process inquiry, since it is evident that, even if it had a cognizable property right, the Board did not deprive it of any such right in an arbitrary manner. As we concluded in the context of Harlen's equal protection claim, the Board had legitimate interests which could rationally be furthered through the denial of Harlen's application. *See id.* (noting that a zoning board's action can be considered arbitrary or irrational only where it has no legitimate basis). As a result, the Board's actions cannot be held to be arbitrary as a matter of federal constitutional law.

■ The heart of Harlen's claim is that the Board came to an improper conclusion. Harlen's arguments rely heavily on New York cases arising out of Article 78 appeals of local zoning decisions which raise no federal constitutional issue. *See C.B.H. Prop. v. Rose,* 205 A.D.2d 686, 613 N.Y.S.2d 913, 914–15 (2d Dep't 1994). The Board may or may not have made the right decision on the merits of the application, but that issue does not raise a federal question. *See Yale Auto Parts,* 758 F.2d at 58–59 ("Indeed, even an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim ... when the applicant has a state law remedy.") (citation omitted). As we have held numerous times, substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit.... [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale,* 170 F.3d at 263. The activities of the Board in this case did not transgress the "outer limit" of legitimate governmental action, therefore, they do not give rise to a federal substantive due process claim. *See id.*

We repeat the admonition that federal courts should not become zoning boards of appeal. *E.g., Lisa's Party City,* 185 F.3d at 17. State courts are better equipped in this arena and we should respect "principles of federalism ... [and avoid] unnecessary state-federal conflict with respect to governing principles in an area principally of state concern." *Yale Auto Parts,* 758 F.2d at 59. Litigants do themselves a disservice when they attempt to clothe state causes of action in the garb of a federal claim while ignoring available state remedies.

## CONCLUSION

We conclude that the district court properly granted summary judgment on Harlen's equal protection and substantive due process claims. Accordingly, the judgment of the district court is affirmed.