# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2016

No. 14-3831-cv

ACE PARTNERS, LLC D/B/A TC'S PAWN CO.,
*Plaintiff-Appellee,*

v.

TOWN OF EAST HARTFORD, EAST HARTFORD POLICE DEPARTMENT,
MARK J. SIROIS, CHIEF OF POLICE, I/O, JOHN MURPHY, DEPUTY CHIEF
OF POLICE, I/O,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Connecticut

ARGUED: JUNE 23, 2017
DECIDED: FEBRUARY 28, 2018

Before: JACOBS, LEVAL, RAGGI, *Circuit Judges.*

On appeal from that part of a summary judgment granting ACE Partners, LLC, d/b/a TC's Pawn Co., compensatory damages and attorney's fees on its § 1983 procedural due process challenge to the Town of East Hartford's decision not to renew plaintiff's license to deal in precious metals, defendants argue that the United States District Court for the District of Connecticut (Chatigny, *J.*) misconstrued Conn. Gen. Stat. § 21-100(a) in finding plaintiff to hold a constitutionally protected property interest in the license renewal.

REVERSED AND REMANDED.

———————

DANIEL J. KLAU (James R. Smart, Rory M. Farrell, *on the brief*), McElroy, Deutsch, Mulvaney & Carpenter, LLP, Hartford, Connecticut, *for Plaintiff-Appellee*.

THOMAS R. GERARDE (Katherine E. Rule, *on the brief*), Howd & Ludorf, LLC, Hartford, Connecticut, *for Defendants-Appellants*.

———————

REENA RAGGI, *Circuit Judge*:

This case concerns a 2009 decision by defendant East Hartford Chief of Police Mark J. Sirois not to renew pawnbroker and precious metals licenses held by plaintiff ACE Partners, LLC, d/b/a TC's Pawn Co. ("ACE") after the State Attorney searched ACE's East Hartford premises and arrested two of its employees for attempting to receive stolen property. ACE sued the Town of East Hartford, its Police Department, Chief Sirois, and then-Deputy Chief John Murphy in the

United States District Court for the District of Connecticut (Robert N. Chatigny, *Judge*) pursuant to 42 U.S.C. § 1983 for alleged violations of substantive and procedural due process. *See* U.S. Const., amend. XIV. The district court awarded summary judgment to defendants on all of ACE's claims with one exception. It awarded ACE summary judgment against two defendants, the Town of East Hartford and Chief Sirois in his official capacity (hereafter, collectively, "the Town"), on ACE's claim that the decision not to renew its precious metals license violated procedural due process because it was made without adequate notice and opportunity to be heard. *See Ace Partners, LLC v. Town of East Hartford*, No. 3:09-CV-1282 (RNC), 2011 WL 4572109, at *5 (D. Conn. Sept. 30, 2011). The Town now appeals from that part of the amended final judgment, entered on August 11, 2016, as awards ACE $352,660 plus interest in compensatory damages and $490,831.75 in attorney's fees on this procedural due process claim.[1]

For the reasons stated herein, we conclude that ACE was not entitled to summary judgment on this procedural due process challenge because Connecticut law does not afford it a constitutionally protected property interest in the renewal of its precious metals license. For the same reason, we conclude that the

---

[1] Although both parties identify defendant Murphy as an appellant, the district court granted him summary judgment on all ACE's claims, a ruling he understandably does not dispute before this court. *See Ace Partners, LLC v. Town of East Hartford,* 2011 WL 4572109, at *6. Meanwhile, ACE does not appeal from those parts of the judgment in favor of defendants. Specifically, it does not appeal the award of summary judgment to all defendants on ACE's substantive due process challenge to both renewal denials or on its procedural due process challenge to the renewal denial of its pawnbroker license. *See id.* at *2–5. ACE also does not appeal the summary judgment award to defendant Sirois in his individual capacity and to defendant Murphy in his individual and official capacities on ACE's procedural due process challenge to the renewal denial of its precious metals license. *See id.* at *6–7. Thus, we do not discuss those rulings further in this opinion, except as they bear on the Town's appeal.

Town is entitled to judgment on this claim. Accordingly, we reverse that part of the final judgment in favor of ACE, and we remand this case to the district court for it to enter judgment in favor of defendants on all claims. That reversal extends to the award of attorney's fees because our ruling on the merits means that ACE is not now, and could not ever properly have been considered, a "prevailing party," the necessary predicate for a fees award pursuant to 42 U.S.C. § 1988(b). In light of that ruling, there is no need to address the Town's proximate cause challenge to the award of compensatory damages or its reasonableness challenge to the award of attorney's fees.

## BACKGROUND

### I.     ACE Procures Pawnbroker and Precious Metals Licenses for its East Hartford Location

At times relevant to this case, ACE operated pawnbroker and precious metals businesses from locations in Waterbury and East Hartford, Connecticut. Connecticut law regulates such businesses, requiring each to be conducted pursuant to licenses issued for one-year terms by designated officials of the municipalities wherein the businesses are to be conducted. *See* Conn. Gen. Stat. §§ 21-39, 21-40, 21-100. Before opening its East Hartford store in October 2007, ACE owner Christa Matuschkowitz applied to the Town for and was granted one-year pawnbroker and precious metals licenses. The following year, Matuschkowitz applied to renew these licenses, which renewal was granted for one year running from August 9, 2008, through August 9, 2009.

4

## II.    The Arrest of ACE Employees and the Search of its Store

In the spring of 2009, ACE's East Hartford location came under scrutiny by the Connecticut State Attorney, who was then supervising a task force investigating suspected trafficking in stolen property by certain pawnshops across the state.  Pursuant to that investigation, on or about April 14, 2009, a state police officer, operating undercover, offered to sell two ACE employees, subsequently identified as Nicholas Carbone and General Manager Jay Sargent, what appeared to be stolen property, specifically, a "new in box" power tool still equipped with "spider wrap," an anti-theft device that emits a loud noise if its cable is cut.  J.A. 198–201.  In a recorded exchange with the officer, Sargent stated that he would not buy the tool with the spider wrap on it, but "if it wasn't on it I could buy it, but I can't take it off." *Id.* at 199.  The officer briefly left the store and returned with the spider wrap removed from the tool, whereupon Carbone, in Sargent's presence, paid the officer $35 for the tool—which had a retail value of $214—and asked if he had "another one."  *Id.* at 200.

On or about June 3, 2009, other officers working with the State Attorney returned to ACE's East Hartford store and there conducted a buy-bust operation, arresting two participating employees, Carbone and Nicholas St. Peter, and seizing various items from the premises pursuant to a search warrant.  Carbone and St. Peter were charged with misdemeanor larceny based on their attempted receipt of stolen property.  *See* Conn. Gen. Stat. § 53a-125a.  Sargent would also be arrested on misdemeanor larceny charges on August 11, 2009.  *See id.* §§ 53a-125b; 53a-48.[2]

---

[2] In October 2010, ACE and Sargent entered into agreements with the State Attorney, whereby the former waived any claims to property seized from the East Hartford store

5

### III. The Town Decides Not To Renew ACE's Licenses

On June 30, 2009, *i.e.*, shortly after the Carbone-St. Peter arrests, East Hartford Deputy Police Chief Murphy prepared a letter for Chief Sirois's signature proposing to revoke ACE's pawnbroker and precious metals licenses "for cause," pursuant to Conn. Gen. Stat. §§ 21-40, 21-100(a), based on the "[r]ecent occurrences" at its East Hartford location. J.A. 241. The letter advised ACE that it could request a hearing. Sirois, however, decided not to revoke ACE's licenses at that time, and the letter was never sent.

The following month, on July 20 and 21, 2009, Matuschkowitz filed applications with the Town to renew ACE's pawnbroker and precious metals licenses, which were scheduled to expire on August 9, 2009. In these applications, Matuschkowitz identified General Manager Sargent, as well as herself, as among ACE's owners or officers. Chief Sirois denied renewal, advising Matuschkowitz of his decision in a letter dated Friday, August 7, 2009, which explained that "[r]ecent occurrences" at ACE's East Hartford location "demonstrate that there exists cause not to renew." *Id.* at 379. At his deposition in this action, Sirois testified that, at the time he reviewed ACE's renewal application, he had been advised by Murphy that the State Attorney had developed incriminating evidence of stolen property trafficking against ACE East Hartford employees, including a manager; that two such employees had already been arrested; and that the arrest of a third ACE employee was anticipated. Sirois acknowledged that he did not know the particular evidence supporting the State Attorney's actions.

---

(with certain exceptions) and consented to the property's return to the original owners or its forfeiture to the State of Connecticut. In turn, the State Attorney agreed not to pursue prosecutions of ACE or its arrested employees.

ACE received Sirois's letter denying renewal on Saturday, August 8, 2009, one day before its pawnbroker and precious metals licenses expired on Sunday, August 9. On Monday, August 10, ACE General Manager Sargent requested a meeting with Sirois to discuss his adverse renewal decision. The request was denied, with Deputy Chief Murphy advising Sargent that there was no reason for a meeting. The following day, August 11, the State Attorney arrested Sargent.

Without the requisite licenses to operate as a pawnbroker or to deal in precious metals, ACE closed its East Hartford store.[3]

## IV. District Court Proceedings

On August 12, 2009, ACE filed this action. Discovery ensued, after which the parties, on October 1, 2010, cross-moved for summary judgment, with defendants urging dismissal of all claims and ACE seeking judgment in its favor on its procedural due process claim. We here focus on the procedural claim, as the partial grant of summary judgment to ACE on the part of that claim pertaining to the precious metals license is the only ruling challenged on this appeal.

The district court construed Connecticut's *pawnbroker* licensing statute, particularly the phrase stating that "the chief of police of any city *may* grant [pawnbroker] licenses to *suitable persons*," *see* Conn. Gen. Stat. § 21-40 (emphasis added), to afford sufficient discretion to the licensing authority to preclude ACE from establishing a

---

[3] It is not clear whether ACE would have kept the store open if it had secured renewal of only the precious metals license. That question might bear on the Town's proximate cause challenge to damages in light of the district court's rejection of ACE's procedural due process challenge to the denial of its pawnbroker license. We need not pursue the matter, however, because ACE has not challenged the district court's determination that it lacked a constitutionally protected property interest in the renewal of its pawnbroker license, and we here conclude that it lacked such an interest in renewal of its precious metals license.

constitutionally protected property interest in the renewal of that license. *See Ace Partners, LLC v. Town of East Hartford*, 2011 WL 4572109, at *2–3. Accordingly, it awarded summary judgment to defendants on that part of ACE's procedural claim. *See id*. In the absence of comparable language in the *precious metals* licensing statute, however, the district court concluded that ACE had shown a constitutionally protected property interest in the renewal of that license and, based on a lack of notice and opportunity to be heard before renewal was denied, the court awarded ACE summary judgment on that part of its procedural claim against the Town. *See id*. at *4–5.

Following a failure to secure reconsideration, a determination of damages and attorney's fees, and the entry of an amended final judgment, the Town filed this appeal.

## DISCUSSION

### I.    Standard of Review

We review a challenged award or denial of summary judgment *de novo,* and we will affirm only if the record, viewed in the light most favorable to the non-movant, shows no genuine dispute of material fact and the movant's entitlement to judgment as a matter of law. *See Jackson v. Fed. Express*, 766 F.3d 189, 193–94 (2d Cir. 2014).

To succeed on a procedural due process claim that one has been denied adequate notice of an adverse action or a meaningful opportunity to be heard, a plaintiff must first establish that the challenged action "deprived him of a protected property interest." *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009); *see Barrows v. Burwell*, 777 F.3d 106, 113–14 (2d Cir. 2015). To show such a protected interest, a plaintiff must demonstrate more than an

"abstract need or desire" for the matter at issue, or a "unilateral expectation" as to its receipt. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *accord Barrows v. Burwell*, 777 F.3d at 113. Rather, a plaintiff must establish "a legitimate claim of entitlement," one "created and . . . defined by existing rules or understandings that stem from an independent source," including, as pertinent here, state law. *Board of Regents of State Colls. v. Roth*, 408 U.S. at 577; *accord Barrows v. Burwell*, 777 F.3d at 113.

Where, as here, the asserted interest is a government-issued license or permit, a legitimate claim of entitlement will be found to exist "where, under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 504 (2d Cir. 2001) (internal quotation marks omitted). Thus, a property interest in a license or permit largely turns on "whether the issuing authority lacks discretion to deny the permit," *i.e.*, whether the authority "is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Id.* (internal quotation marks omitted). In other words, "[a] clear entitlement, and, in turn, a constitutionally protected property interest, exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation marks omitted).

Applying these principles here, we conclude that approval of ACE's renewal application for its precious metals license was not "virtually assured" by Connecticut law so as to afford ACE the protected property interest necessary for its procedural due process claim.

## II. Section 21-100(a)'s Plain Language Does Not Support ACE's Claimed Property Interest in Renewal

In explaining this conclusion, we note at the outset that the Connecticut Supreme Court has not itself ruled on the degree of discretion that Conn. Gen. Stat. § 21-100(a) affords local authorities in issuing or renewing the license required to deal in precious metals. *See generally Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010) (stating that federal courts are bound by highest state court's construction of state law). In the absence of such controlling precedent, we look to whether the statute, construed according to Connecticut's interpretive standards, unambiguously answers the question. *See Morenz v. Wilson-Coker*, 415 F.3d 230, 236–37 (2d Cir. 2005) (stating that federal court is "bound to interpret Connecticut law according to Connecticut's own interpretative rules"). The "plain meaning" standard of statutory interpretation is codified in Connecticut law and states as follows:

> The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.

Conn. Gen. Stat. § 1-2z; *accord Morenz v. Wilson-Coker*, 415 F.3d at 236 (quoting § 1-2z and citing supporting Connecticut precedent).

To apply that standard here, we begin by reproducing the statutory text for Connecticut's precious metals licensing statute. At the time ACE applied for and was denied renewal of its licenses, that law stated in pertinent part as follows:

10

> **Sec. 21-100. License required. Fee. Record of transactions.** (a) No person may engage in or carry on the business of purchasing gold or gold-plated ware, silver or silver-plated ware, platinum ware, watches, jewelry, precious stones or coins unless such person is licensed by the chief of police or, if there is no chief of police, the first selectman of the municipality in which such person intends to carry on such business [subject to exceptions not applicable here]. Such person shall pay an annual fee of ten dollars for such license. The license may be revocable for cause, which shall include, but not be limited to, failure to comply with any requirements for licensure specified by the licensing authority at the time of issuance. A chief of police or first selectman shall refuse to issue a license under this subsection to a person who has been convicted of a felony. A chief of police or first selectman may require any applicant for a license to submit to state and national criminal history records checks.

Conn. Gen. Stat. § 21-100(a) (2001).

The parties' arguments require us to consider this precious metals licensing statute in relation to Connecticut's pawnbroker licensing statute. Accordingly, we also reproduce the relevant sections of the latter statute as in effect at the pertinent time:

> **Sec. 21-39. License required.** . . . No person, corporation, limited liability company or partnership shall, in any city or town of this state, engage in or carry on the business of loaning money upon deposits or pledges of [tangible property], or of purchasing such property on condition of selling the same back again at a stipulated price, unless such person, corporation, limited liability company or partnership is licensed as a pawnbroker . . . .

11

> **Sec. 21-40. Issuance of licenses. Fees.** The selectmen of any town and the chief of police of any city may grant licenses to suitable persons to be pawnbrokers . . . and may revoke such licenses for cause . . . . The person so licensed shall pay . . . a license fee of fifty dollars, and twenty-five dollars per year thereafter for renewal of such license, and shall, at the time of receiving such license, file . . . a bond to such city or town, with competent surety, in the penal sum of two thousand dollars, to be approved by such licensing authority, and conditioned for the faithful performance of the duties and obligations pertaining to the business so licensed. Each such license shall designate the place where such business is to be carried on and shall continue one year unless sooner revoked. No license shall be issued under this section by the selectmen or chief of police to any person who has been convicted of a felony. The selectmen or chief of police may require any applicant for a license under this section to submit to state and national criminal history records checks.

*Id.* § 21-39 (1997), § 21-40 (2001).[4]

Focusing now on particular statutory language, we note that the opening words of § 21-100(a), no less than the opening words of § 21-39, speak of prohibition, not entitlement: "No person" can conduct either a precious metals or pawnbroker business in the State of Connecticut unless he is licensed to do so by designated authorities of the municipality where the business will be conducted. *See generally Aurilio v. Sweeney*, No. CV 980357150S, 1999 WL 171414, at *4 (Conn. Super. Ct. Mar. 11, 1999) (observing that § 21-100(a) is "a prohibition of the business unless a license is obtained" (internal

---

[4] As noted *supra* at 3 n.1, ACE does not appeal the district court's determination that these statutory sections confer no property interest in the issuance or renewal of a pawnbroker license.

quotation marks omitted)), *aff'd* 761 A.2d 801 (Conn. App. Ct. 2000). Neither § 21-100(a) nor § 21-40 pronounce specific requirements for securing a license, although both prohibit the licensing of convicted felons and impose annual fees. The text of the precious metals licensing statute, however, plainly contemplates "requirements," and moreover, as discussed in the next paragraph, affords police chiefs virtually unfettered discretion to specify them. Conn. Gen. Stat. § 21-100(a).

This is evident from the statute's revocation provision, which states that precious metals licenses may be revoked "for cause," a term that is not statutorily defined except to state that it "shall include, but not be limited to, failure to comply with *any requirements for licensure specified by the licensing authority at the time of issuance*." *Id.* (emphasis added). By thus referencing "requirements for licensure," the statute makes clear that the issuance or renewal of a precious metals license is subject to such requirements as, here, the chief of police may specify in the exercise of his discretion. *See* Webster's Third New International Dictionary 1929 (1976) (defining "requirement" as "something required," "a requisite or essential condition"); *State v. Agron*, 148 A.3d 1052, 1056 (Conn. 2016) (presuming, in absence of statutory definition, that legislature intended word to have its "ordinary meaning" as expressed in dictionary (internal quotation marks omitted)). Further, by using the expansive adjective "any" to describe these "requirements for licensure," while providing no statutory criteria for such requirements, the statute makes plain that the chief's discretion to specify requirements is virtually unfettered. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) (construing word "any" to have expansive meaning, that is, "'one or some indiscriminately of whatever kind'" (quoting Webster's Third New International

Dictionary 97 (1976))); *Commission on Human Rights & Opportunities v. Bd. of Educ. of Cheshire*, 855 A.2d 212, 238 (Conn. 2004) (recognizing that unless context signals otherwise, word "any" constitutes "broad and inclusive language").

To be sure, even broad licensing discretion cannot be exercised arbitrarily, invidiously, or discriminatorily. But that does not mean that an applicant has a property interest in issuance of the license. Rather, such potential abuses are checked by substantive due process and equal protection, which apply regardless of whether an applicant has a property interest protected by procedural due process.[5] In deciding whether ACE has such a constitutionally protected property interest, we consider only the degree of licensing discretion afforded police chiefs by § 21-100(a). We conclude that, far from "lack[ing] discretion to deny" ACE a renewal of a precious metals license, *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d at 504, the police chief had broad discretion to do just that by virtue of his authority to specify licensing requirements. Indeed, that is the conclusion reached by the only state court that appears to have construed § 21-100(a). *See Aurilio v. Sweeney*, 1999 WL 171414, at *4 (concluding from lack of statutory criteria for issuing agent to determine whether precious metals license should issue that legislature intended issuance of such license to rest within agent's "sound discretion").[6]

---

[5] ACE does not here appeal the district court's rejection of its substantive due process claim for failure to show that the refusal to renew its licenses was arbitrary. Nor has it ever asserted an equal protection claim.

[6] Because *Aurilio* is not a decision of the Connecticut Supreme Court, it does not control our construction of § 21-100(a). Nevertheless, the decision can be a "helpful indicator" of how Connecticut's highest court might view the discretion issue. *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (recognizing that decisions by intermediate state courts, while not binding, can be "helpful indicators" of how state's highest court might view issue).

That conclusion is only reinforced by the statute's reference to requirements specified "at the time of issuance." Conn. Gen. Stat. § 21-100(a). This makes plain that requirements need not be specified for applicants in advance of their applications. Rather, the police chief's discretion is broad enough to allow him to specify requirements right up until the time of issuance to address concerns raised by facts and circumstances attending that application. Thus, a police chief can decide to issue a license, but only on condition that the licensee abide by requirements specified at the time of issuance. It necessarily follows that the chief can also decline to issue licenses where it is apparent that an applicant already fails to satisfy such requirements. Indeed, it would be absurd to construe § 21-100(a) otherwise, so as to allow a police chief, for example, to issue a license on condition that no employee of the licensee be arrested for criminal activity on the premises, but to preclude him from denying a license to an applicant whose employees have already been arrested and are pending investigation for such conduct. *See generally Allen v. Comm'r of Revenue Servs.*, 152 A.3d 488, 501 (Conn. 2016) (discussing "well established" tenet that "those who promulgate statutes do not intend absurd consequences or bizarre results" (alterations and internal quotation marks omitted)), *cert. denied*, 137 S. Ct. 2217 (2017).

That the police chief here effectively imposed a no-employee-arrest requirement is evident from the explanation he gave ACE for not renewing its precious metals license. To the extent § 21-100(a) provides for the police chief to "specify" requirements for licensure, the police chief's denial letter appears not to have articulated such a no-arrest requirement with the precision or detail contemplated by that verb. *See* Webster's Third New International Dictionary 2187 (1976) (defining "specify" as "to mention or name in a specific or explicit manner," to "tell or state precisely or in detail"). But ACE can

15

hardly claim that it was prejudiced by lack of specificity here. The record admits no dispute that (1) ACE employees had been arrested and were then under investigation for attempting to receive stolen property from undercover officers at the licensed premises, and (2) ACE understood the reference to "recent events" in the police chief's denial letter to allude to these arrests as well as to related seizures from its premises incident to a search warrant. J.A. 379.

Indeed, rather than argue inadequate specification, ACE complains that Chief Sirois lacked personal knowledge of the facts supporting the referenced arrests, and emphasizes that neither ACE nor its employees were ultimately prosecuted by the State Attorney. The argument merits little discussion. ACE does not—and cannot— argue that the arrests were not well supported by probable cause, or that the denial of renewal was arbitrary. In any event, the issue before us is not whether sufficient evidence (or knowledge of evidence) supported Sirois's exercise of discretion. We consider only whether the language of § 21-100(a) so effectively deprived Sirois of discretion to do anything but grant ACE's renewal application in the circumstances of this case that ACE can claim a protected property interest. For the reasons just explained, we conclude that the statutory language, far from affording little or no renewal discretion to the police chief here, granted him such broad discretion to specify any requirements for licensure right up to the time a license would have issued, that ACE cannot show that the renewal of its license was virtually assured.

In urging otherwise, ACE relies on the 1981 amendment to § 21-100(a), which added the earlier-referenced felon bar. That bar states that the chief of police "shall refuse to issue a [precious metals] license . . . to a person who has been convicted of a felony." Conn. Gen. Stat.

16

§ 21-100(a). This text cannot be construed, as ACE urges, to make "the only requirement" for a precious metals license "that the holder not be a convicted felon"—a conclusion reached with neither textual analysis nor citation to authority in *Curcio v. Torres*, No. 3:00-cv-976 (GLG), 2000 WL 1610767, at *3 (D. Conn. Oct. 4, 2000), and quoted approvingly by the district court here, *see Ace Partners, LLC v. Town of East Hartford*, 2011 WL 4572109, at *4.[7] While the words "shall refuse" are properly construed as a mandate that limits the chief of police's licensing discretion, *see generally Wiseman v. Armstrong*, 989 A.2d 1027, 1031 (Conn. 2010) ("[T]he word shall creates a mandatory duty when it is juxtaposed with a substantive action verb." (alteration and internal quotation marks omitted)), what that mandate here limits is the police chief's discretion to *grant* licenses, not his discretion to *deny* them. In other words, the quoted felon bar removes from the sphere of persons to whom the police chief can grant precious metals licenses those persons convicted of felony crimes. But within the class of non-felons, the 1981 amendment leaves undisturbed § 21-100(a)'s language affording the chief broad discretion to specify "any requirements for licensure." Conn. Gen. Stat. § 21-100(a); *see Aurilio v. Sweeney*, 1999 WL 171414, at *4–5. Indeed, despite its agreement with *Curcio*, the district court acknowledged a police chief's statutory authority to set further requirements for licensure, concluding that if a non-felon applicant "fulfills those requirements, the chief has no discretion as to whether to issue the license." *Ace Partners, LLC v. Town of East Hartford*, 2011 WL 4572109, at *4. What the district court failed to consider, however, is that the police chief here effectively

---

[7] *Curcio* failed to acknowledge, much less distinguish, the contrary construction of § 21-100(a) by a Connecticut court in *Aurilio v. Sweeney*, 1999 WL 171414, at *4–5. The district court acknowledged the different interpretations, *see ACE Partners, LLC v. Town of East Hartford*, 2011 WL 4572109, at *4 (observing that *Aurilio* construed § 21-100(a) to grant police chief "unlimited discretion" while *Curcio* construed statute to grant "no discretion"), but concluded simply that it "agree[d] with the decision in *Curcio*," *id.*; *but see infra* at 17.

specified a requirement for licensure that ACE could not satisfy, *i.e.*, that its employees not have been arrested for illegal business activities on the licensed premises. For reasons already stated, we conclude that doing so fell well within the broad discretion afforded the police chief by § 21-100(a).[8]

*Barletta v. Rilling*, 973 F. Supp. 2d 132 (D. Conn. 2013), cited by ACE, is not to the contrary. The district court there held that § 21-100(a)'s felon bar violated equal protection because it was overbroad to the state's purpose. *See id.* at 135–40. That determination was not appealed and is not before us today or relevant to our analysis. In *Barletta*, however, the district court went on to reject a procedural due process challenge to the denial of a precious metals license, stating that "[n]othing in state law or custom gave [plaintiff] a property right to a precious metals license." *Id.* at 140.

Despite this statement anticipating our holding today, ACE maintains that *Barletta*, like *Curcio*, construed § 21-100(a) to "require[] a municipality to issue a precious metals license to an applicant unless the applicant is a felon." Appellee Br. at 17. In support, it cites *Barletta*'s observation, made in the course of its equal protection analysis, that, after addition of a felon bar to § 21-40, "anyone other than persons convicted of a felony *could* obtain a precious metals license." *Barletta v. Rilling*, 973 F. Supp. 2d at 138 (emphasis added). The argument fails for the simple reason that "could" does not mean "must." Indeed, when the quoted language is placed in context, it is evident that *Barletta* recognized the felon bar to limit the police chief's broad licensing discretion in "only one way," *i.e.*, he could not issue

---

[8] Nothing in § 21-100(a) appears to prevent a person from submitting a new license application when it can satisfy the requirement at issue as, for example, here, by ACE showing that no person arrested for criminal activities relating to its business would have an interest in or be employed at the licensed premises.

precious metals licenses to convicted felons in any circumstances. *Id.* The chief's discretion was not "bounded," however, as to non-felons who "could" still obtain such licenses in the exercise of the chief's discretion to specify requirements. *Id.* (observing that "bar of every person ever convicted of a felony . . . left [police chief's] discretion bounded in only one way: anyone other than persons convicted of a felony could obtain a precious metals license").

ACE nevertheless maintains that police chiefs lack discretion to deny precious metals licenses to non-felons because § 21-100(a) does not contain language akin to that in § 21-40 stating that police chiefs "may grant [pawnbroker] licenses to suitable persons." Conn. Gen. Stat. § 21-40. Analyzing other licensing statutes with comparable "suitable persons" language, the Connecticut Supreme Court has held that determining an applicant's suitability necessarily requires the issuing agent to exercise "judgment and reasoned discretion." *Ballas v. Woodin*, 231 A.2d 273, 275 (Conn. 1967). The district court relied on this precedent in concluding that ACE lacked a protected property interest in the renewal of its pawnbroker license because "[t]he 'suitable person' determination gives the chief of police enough discretion that a given applicant . . . cannot be certain that he will be found suitable." *Ace Partners, LLC v. Town of East Hartford*, 2011 WL 4572109, at *3. ACE maintains that when the § 21-100(a) felon bar is considered together with the absence of "suitable person" language, the statute must be understood to deprive police chiefs of discretion to deny precious metals licenses to non-felons.

Indeed, ACE argues that this conclusion is compelled by legislative history showing that, as initially proposed, the 1981 amendment to § 21-100(a) would have added not only a felon bar but the following "suitable person" language: "A chief of police or first

19

selectman may refuse to issue a license under this subsection upon a sufficient finding that the applicant is not a suitable person to receive such license. No license shall be issued to a person who has been convicted of a felony." H.B. 5174, 1981 Leg., Gen. Assemb., Jan. Sess. (Conn. 1981). ACE submits that the deletion of the first sentence from the final amendment signals legislative intent to deny police chiefs discretion to deny precious metals licenses to non-felons. *See* H. Amendment A to H.B. 5174, 1981 Leg., Gen. Assemb., Jan. Sess. (Conn. 1981).

The legislative history cited by ACE does not evidence such intent. It merely recites the fact that the "suitable person" language was deleted from the final amendment. *See Proceedings Before Conn. S. Gen. Assemb.*, 1981 Leg., Vol. 24, Pt. 9, 2762–3066, at 3045 (Conn. 1981) (statement of Sen. Mustone) (referencing "eliminat[ion] from the Bill [of] authorization for the local licensing authority to refuse to issue a license to an unsuitable person"); *Proceedings Before Conn. H. Gen. Assemb.*, 1981 Leg., Vol. 24, Pt. 10, 3133–3481, at 3443 (Conn. 1981) (statement of Rep. Carragher) (referencing deletion of "unsuitable person language" from amendment, so that statute "will now in fact mandate that" licensing authority "not issue a license to a convicted felon"). Nothing in these statements explains *why* the language was removed.

Our task, however, is not to speculate about legislative intent with respect to language *not* included in § 21-100(a). Our task is to construe the statutory text in effect at the time of the events in dispute. In 1983, Connecticut amended the precious metals statute to clarify that revocation for cause "shall include . . . failure to comply with *any requirements for licensure* specified by the licensing authority." 1983 Conn. Acts 689 (Reg. Sess.) (codified as amended at Conn. Gen. Stat.

20

§ 20-100(a) (1983)) (emphasis added). ACE's reliance on the felon bar to argue lack of discretion as to non-felons fails because it ignores this statutory text.

Thus, § 21-100(a) and § 21-40 both afford licensing discretion, albeit through different language: § 21-100(a) through a provision to specify "any requirements for licensure," § 21-40 through a "suitable person" provision. We need not here decide whether the authority to specify "any requirement for licensure" affords discretion that is the functional, if not the precise, equivalent of identifying a person's suitability to hold a license. We conclude only that the former task reaches broadly and requires the exercise of "judgment and reasoned discretion" as much as the latter. *Ballas v. Woodin*, 231 A.2d at 275. Indeed, because § 21-100(a) allows licensing requirements to be identified up to the time of issuance, and because such requirements may respond to concerns that become apparent only upon review of an application and its attending circumstances, the applicant for a precious metals license can be no more certain than the applicant for a pawnbroker license that its application will be granted and the requested license issued. Thus, we conclude that § 21-100(a) does not confer on non-felons a constitutionally protected property interest in the issuance or renewal of a precious metals license.

ACE nevertheless strives to preserve its judgment by arguing that even if § 21-100(a) is properly construed not to confer a property interest in the issuance of a new license, the same conclusion should not obtain for license renewals, which are more akin to revocations. Connecticut law does not support the argument. Once a license is issued, Connecticut recognizes the licensee to hold a property interest protected by procedural due process, but the interest lasts only for the term of the license. *See Hart Twin Volvo Corp. v. Comm'r of Motor*

21

*Vehicles*, 327 A.2d 588, 591 n.1 (Conn. 1973) (holding that "license, being within the scope of the protection afforded by the due process clause, is indeed a property right once it has been issued, and it remains such *until its expiration date* so long as the laws pertaining to its use are obeyed" (emphasis added)); *Rocque v. Conn. Waste Oil, Inc.*, No. CV 010809202S, 2001 WL 1743219, at \*2 (Conn. Super. Ct. Dec. 20, 2001) (rejecting due process challenge to denial of license renewal because "property right expired when the permit expired"). Thus, whatever support ACE might find in other states' laws for equating renewal denials and revocations, *see Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) (observing that Illinois law treats refusal to renew license for cause as equivalent to revocation, affording a constitutionally protected property interest in renewal), Connecticut law affords none.

In sum, nothing in the plain language of Connecticut's precious metals licensing statute, even when viewed together with its pawnbroker statute, gives rise to "a certainty or a very strong likelihood" that ACE's precious metals license would be renewed in the circumstances of this case. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d at 504. Far from compelling the chief of police to issue or renew precious metals licenses to non-felons, the plain language of § 21-100(a) affords the chief virtually unfettered discretion to grant, renew, or deny licenses to such applicants by allowing him to specify "any requirements for licensure" that he deems warranted and to do so up to the time he makes the licensing decision. "Any requirements" is broad enough to allow the chief to specify requirements addressing concerns raised by a particular application, as for example here, a requirement that none of the applicant's employees have been arrested and be pending investigation for criminal activity on the licensed premises. While the chief of police

may have failed to state such a requirement as explicitly or precisely as contemplated by the word "specify," the record indicates both that ACE could not satisfy that requirement and that it understood that to be the reason for denial. In these circumstances, and in the face of such broad statutory authority to set licensing requirements, ACE cannot show that, but for the denial of procedural due process, § 21-100(a) "virtually assured" the renewal of its precious metals license. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d at 378 (internal quotation marks omitted).

Accordingly, the judgment in favor of ACE on its procedural due process claim against the Town for failing to renew its precious metals license is reversed, and the case is remanded to the district court for the entry of judgment in favor of the Town on this claim and, thus, for defendants on all claims.

### III. Reversal of the Judgment in Favor of ACE Necessarily Reverses the Award of Attorney's Fees to It as a Prevailing Party

Title 42 U.S.C. § 1988(b) allows a court to award "reasonable attorney's fees" to the "prevailing party" in a § 1983 action. The district court effectively designated ACE a prevailing party, at least in part, when, on September 22, 2014, it entered judgment in ACE's favor on its procedural due process challenge to the Town's refusal to renew its precious metals license. Thereafter, ACE relied on the September 22, 2014 judgment in its favor to move for attorney's fees, which the district court ordered on April 21, 2016. The district court reiterated this fees award in its amended final judgment of August 11, 2016, the focus of which was to award ACE pre- and post-judgment interest on earlier ordered compensatory damages.

Our reversal of the district's court judgment because ACE failed to demonstrate the property interest required for a procedural due process claim necessarily extends to reverse the award of attorney's fees. This is because that merits ruling removes from this case the essential predicate for an award of fees. ACE is not, and cannot be considered ever properly to have been, a "prevailing party." *See Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 81 (2d Cir. 2001) (reversing § 1988(b) fees award to plaintiff following reversal of its First Amendment claim); *Russo v. State of New York*, 672 F.2d 1014, 1023 (2d Cir. 1982) (citing precedent foreclosing § 1988 fees award to party who did not succeed on civil rights claim), *modified on other grounds*, 721 F.2d 410 (2d Cir. 1983).

In seeking to avoid this result, ACE argues that we lack jurisdiction to review the fees award because the Town failed timely to appeal from the district court's April 21, 2016 order. *See* Appellee Br. at 29–30 (arguing that, under Fed. R. Civ. P. 58(a)(3), an award of attorney's fees pursuant to Fed. R. Civ. P. 54(d) is an appealable final order when entered on docket). In support, it cites precedent recognizing that "a postjudgment order granting a *prevailing party* its attorney's fees is collateral to the final judgment in a case." *Id.* at 29 (collecting cases) (emphasis added). Such an argument might have some appeal if the only fees issues before us were collateral to a final judgment in ACE's favor, for example, the Town's challenge to the reasonable calculation of attorney's fees. But it does not persuade here, where our reversal of final judgment on the merits means that ACE was never properly identified as a prevailing party. *See Sole v. Wyner*, 551 U.S. 74, 86 (2007) (holding that plaintiff who secures preliminary injunction does not qualify as prevailing party entitled to § 1988(b) award of attorney's fees "if the merits of the case are ultimately decided against her"); *Clark v. Township of Falls*, 890 F.2d

24

625, 626–27 (3d Cir. 1989) ("In general, when a judgment in favor of a plaintiff is reversed on the merits, that party is no longer a 'prevailing party' under 42 U.S.C. § 1988 and no longer entitled to attorney's fees under that statute."); *cf. Kirk v. N.Y.S. Dep't of Educ.*, 644 F.3d 134, 138 (2d Cir. 2011) (concluding that § 1983 plaintiff who obtained favorable judgment on full record did not lose "prevailing party" status when appeal was declared moot; "no court overturned Kirk's favorable judgment on the merits or rejected the legal premise of the district court's decision").

There is no question here that the Town filed timely notices of appeal from the district court's September 22, 2014 judgment in favor of ACE, as well as from the court's amended final judgment of August 11, 2016. Thus, our reversal of that judgment on the merits necessarily requires us to reverse the award of attorney's fees to ACE, which depended on that judgment.

## CONCLUSION

To summarize, we hold as follows:

1.    Conn. Gen. Stat. § 21-100(a) does not afford applicants a property interest in the issuance or renewal of a precious metals license. Thus, the district court erred in awarding ACE summary judgment on its claim that the Town's decision not to renew its license following the arrests of ACE employees for attempting to receive stolen property on the licensed premises violated procedural due process. Rather, summary judgment must be entered in favor of the Town.

2.    Because our reversal of summary judgment to ACE is a merits decision, ACE is not and could not ever properly have been

considered a "prevailing party," the necessary predicate for any award of attorney's fees pursuant to 42 U.S.C. § 1988(b). We, therefore, reverse that award as well.

Accordingly, the amended judgment of the district court is REVERSED in all respects and the case is REMANDED for the district court to enter judgment on all claims in favor of defendants.