Ali A. SALEH, Hassan Almadrhi, Mahmood Saide, Ali S. Mugalli and Ali Homasin, Plaintiffs–Appellants,

v.

The CITY OF BUFFALO, James C. Szczur, individually and in his official capacity as a Buffalo Police Officer and Kevin Maloney, individually and in his official capacity as a Buffalo Police Officer, Kenneth Devlin, individually and in his official capacity as a Buffalo Police Officer, James Sevchik, individually and, for injunctive relief, in his official capacity as Chief Inspector of the New York State Department of Agriculture, Michael L. O'Brien, individually and in his official capacity as a Buffalo Police Officer, Defendants–Appellees,

John A. Lubecki, individually, and for injunctive and declaratory relief, in his official capacity as an Investigator with the New York State Police, John Doe No. 1, individually and in his/her official capacity as the senior law enforcement agent employed by the United States Department of Immigration and Naturalization assigned to work with the Deli Task Force and John Does Nos. 2 Through 15, being private persons, law enforcement officers or other public officials, who conspired with, acted in concert with or aided and abetted the defendants with respect to the misconduct alleged in the complaint, Defendants.

Docket No. 01–9298.

United States Court of Appeals, Second Circuit.

Nov. 4, 2003.

James Ostrowski, Buffalo, NY, for Plaintiffs–Appellants.

Kevin Keane, Deputy Corporation Counsel City of Buffalo (Michael B. Risman, Corporation Counsel, David R. Hayes, Karen Curtin, Assistant Corporation Counsel, on the brief), Buffalo, NY, for Defendants–Appellees the City of Buffalo, James C. Szczur, Kevin Maloney, Kenneth Devlin and Michael O'Brien.

Julie S. Mereson, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York, Peter H. Shiff, Senior Counsel, Office of the Attorney General, on the brief), Albany, NY, for Defendant–Appellant James Sevchik.

PRESENT: NEWMAN, SOTOMAYOR, and WESLEY, Circuit Judges.

### SUMMARY ORDER

Plaintiffs appeal from a judgment of the United States District Court of the Western District of New York (Elfvin, J.) entered on October 1, 2001, dismissing their claims against the defendants, four Buffalo Police Officers, the Buffalo Police Department, and James Sevchik, Chief Inspector of the New York State Department of Agriculture, following a jury trial, as well as from the denial of their motion for a new trial on November 12, 2002.

Plaintiffs are five Arab–Americans of Yemeni descent, who in 1996 and 1997, the time period relevant to this case, owned and operated delicatessens, or "delis," in Buffalo, New York. Following increasing community complaints about alleged outdated food, trash buildup, loitering, overpricing, sales of single cigarettes and drug paraphernalia relating to delis in the Fillmore district of Buffalo, the Mayor held neighborhood summits to solicit community input on issues that needed to be addressed. A "Deli Task Force" ("DTF") was subsequently assembled, involving officers from the Buffalo Police Department, Immigration and Naturalization Services, New York State Department of Agriculture, New York State Department of Taxation and Finance, the Buffalo City Inspections Department, the Mayor's Housing

Task Force, the Erie County Health Department and the United States Department of Agriculture. *See* Tr. at 666–68, 677, 682, 688. Based on the community complaints, the DTF engaged in approximately eighteen searches of delis in or near the Fillmore district in 1996 and 1997. Sixteen of the targeted delis were owned by Arab–Americans; the other two delis were owned by persons of Vietnamese nationality. The DTF ceased operation in 1997.

Plaintiffs field suit alleging that the defendants violated their Fourth Amendment rights to be free from unreasonable searches and seizures by conducting the searches of their delis without a warrant, and violated equal protection by targeting only Arab-owned delis based on the owners' race.[1] Following a lengthy trial, the district court granted defendant Sevchik's Fed.R.Civ.P. 50 motion for judgment as a matter of law, denied plaintiffs' Rule 50 motion, and dismissed the claims of plaintiffs Ali A. Saleh and Ali S. Mugalli against all defendants. The jury returned a verdict in favor of the remaining defendants on September 14, 2001. Plaintiffs' Rule 50 post-trial motion was denied.

On appeal, plaintiffs raise numerous objections, which can be summarized as follows: (1) the district court erred in refusing to give a charge on the equal protection claim after they submitted proposed language and objected to the absence of such a charge; (2) the district court erred in denying plaintiffs' Rule 50 motion on the equal protection and Fourth Amendment claims; (3) the district court erred in dismissing the claims against Sevchik; (4) the district court erred in granting the defendants' Rule 50 motion as to plaintiffs Saleh and Mugalli; (5) the district court erred in re-

fusing to vacate the verdict in light of the events of September 11, 2001, which plaintiffs assert may have led to anti-Arab bias among the jury; and (6) the district court committed numerous trial errors.

"We review a claim of error in the district court's jury instructions *de novo,* and will reverse on this basis only if the plaintiffs-appellants can show that in viewing the charge given as a whole, they were prejudiced by the error." *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994). We also review *de novo* a district court's grant of a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000). Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the non-moving party, is insufficient to permit a reasonable juror to find in that party's favor. *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir. 2001).

## I. Equal Protection Claim

■ We have held that "[a] litigant is entitled to an instruction on a claim where that claim is supported by evidence of probative value." *Anderson,* 17 F.3d at 557. Where a party has objected to the failure to give the requested charge and shows that there is sufficient evidence supporting the theory behind the instruction that a question of fact may be presented to the jury, the failure to give such an instruction is error that warrants a new trial. *See Boyle v. Revici,* 961 F.2d 1060, 1063 (2d Cir.1992). It is undisputed that plaintiffs properly submitted a request to charge on equal protection and objected to the district court's unexplained refusal to

---

1. Plaintiffs also sued John Lubecki and fifteen "John Doe" officers. Those defendants were dismissed by the district court, and plaintiffs do not appeal that dismissal.

do so. Having reviewed the underlying trial record *de novo*, however, we are unable to say that the district court erred in refusing to give an equal protection instruction.

To prevail on an equal protection claim based on selective enforcement, plaintiffs must show "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (citations and internal quotation marks omitted). Members of the DTF testified that the DTF was formed in response to complaints received by the Buffalo Police Department, Councilman Franczyk's office and the Mayor's office about the operation of delis, particularly in the Fillmore District. Tr. at 737, 750, 754–55, 762–63, 809, 1452, 1807–10, 2004–05. Witnesses further testified that the initial list of delis to be targeted by the DTF reflected those delis with the greatest number of citizen complaints. *Id.* at 739, 1943, 2029–31. Accepting plaintiffs' proffered evidence that community leaders during the initial meetings discussed the nationality of the deli owners while identifying those delis that were the object of the complaints, *id.* at 1352–53, 1810, there is still no evidence in the record that the twelve non-Arab owned delis in the geographical area targeted by the DTF presented similar problems, nor that there were any complaints about those delis. *Cf. Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir.2000) (holding that where the police allegedly stopped and questioned only minority suspects about a particular crime, the plaintiffs were still required to show that a similarly situated group of non-minorities were not so treated because the plaintiffs were "questioned on the altogether legitimate basis of a physical description given by the victim of a crime"). In the absence of any such evidence of probative value as to whether appellants were treated differently than similarly situated individuals, appellants were not entitled to an instruction on their equal protection claim.[2]

## II. Fourth Amendment Claim

■ Plaintiffs next argue the they are entitled to judgment as a matter of law on their Fourth Amendment claim of unreasonable search and seizure. Plaintiffs characterize the searches as intended to uncover evidence of criminal activity, and argue that a warrant was therefore required. As the district court held, this argument overlooks the evidence in the record from which the jury was entitled to conclude that plaintiffs consented to the searches. *See* Tr. at 864, 890 (Almadrhi opened door for police and signed consent form); *id.* at 405–06 (Saide signed consent form); Tr. at 435–40 (Homasin assisted the officers with the search). The district court's denial of plaintiffs' Rule 50 motion, therefore, was not erroneous. *See United States v. Deutsch,* 987 F.2d 878, 883 (2d Cir.1993) (holding that consent is a defense to a Fourth Amendment claim, and that consent may be implied under the totality of the circumstances). More fundamentally, we also note that there was ample evidence in the record from which the jury could have concluded that the searches of their commercial property were administrative in nature, and that the Buffalo police had accompanied the inspectors to provide security. *Cf. Anobile v. Pelligrino,*

---

**2.** For the same reasons, plaintiffs' argument that the district court erred in denying judgment as a matter of law on the equal protection claim fails.

303 F.3d 107, 117 (2d Cir.2002) ("Under certain circumstances, however, the Fourth Amendment permits warrantless administrative searches of commercial property."). Accordingly, we conclude that the denial of judgment as a matter of law was proper, and we will not set aside the jury's verdict on this issue.

We further find no error in the district court's grant of defendants' Rule 50 motions as to the claims of plaintiffs Saleh and Mugalli. Saleh was unable to identify any of the named defendants as the officers who searched his store. While he challenges the dismissal of the Buffalo Police Department, the undisputed evidence established that Saleh's employee gave consent to the search, Tr. at 1366, and dismissal was therefore appropriate. Dismissal of Mugalli's claims was proper because undisputed testimony established that Officers Devlin and O'Brien entered his store and searched it in response to claims by a person outside the deli that someone inside the deli had a machine gun. *See United States v. Medina,* 944 F.2d 60, 68 (2d Cir.1991) (holding that exigent circumstances may permit warrantless searches).

Plaintiffs also argue that the dismissal of Inspector Sevchik at the close of evidence was improper because Sevchik's administrative searches were used as a pretext by the other officers, and because the statutory scheme under which the food inspection occurred was insufficient to allow warrantless searches. We have held that

> warrantless administrative searches of commercial premises conducted pursuant to a regulatory scheme are constitutionally permitted if they meet three criteria: [1] there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made; ... [2] the warrantless inspections must be necessary

to further [the] regulatory scheme; ... [3] the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers....

*Anobile,* 303 F.3d at 117 (citations and internal quotation marks omitted). Notwithstanding plaintiffs' conclusory allegations of "unbridled discretion," there was no evidence in the record that Sevchik's authority was not properly limited by New York's regulations. More importantly, however, there is no evidence that any of the plaintiffs in any way objected to Sevchik's inspection of their stores at the time they occurred. Because we find that Sevchik had the authority to conduct the inspections, plaintiffs' argument that Sevchik's presence was used as pretext for other officers is insufficient to sustain a claim against Sevchik. *See Whren v. United States,* 517 U.S. 806, 815–19, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

IV. Alleged Trial Errors

■ Plaintiffs next argue that the denial of their motion for a new trial after the verdict was rendered was an abuse of discretion in light of the events of September 11, 2001. We disagree. At the beginning of the day on September 12, 2001, the district court raised the issue of possible bias among the jury, and proposed to the counsel that each juror be questioned individually before the case continue. Notably, plaintiffs' counsel agreed with this proposed course of action. The district court then conducted individual voir dire in the presence of counsel, and the jurors all stated that they would not be prejudiced. Because plaintiffs waited until after the verdict was returned against them to request a mistrial, they cannot now be heard to object to that verdict on these grounds.

Finally, plaintiffs challenge the district court's approval of defendants' peremptory challenge to an Arab–American juror as improper under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Supreme Court has held that a challenge to a juror is non-discriminatory when justified by concerns that the juror's ability to speak a foreign language may compromise his impartiality in a case where that language will be spoken by witnesses and translated. *See Hernandez v. New York,* 500 U.S. 352, 360–61, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The attorneys believe, based on their recollections, that the district court judge himself may have provided this justification for the *Batson* challenge. *Batson,* however, requires us to determine whether the attorney exercising the peremptory challenge has proffered a legitimate non-discriminatory rationale for the exclusion of that juror. *Batson,* 476 U.S. at 97–98. Because the voir dire in this case was not conducted on the record and the recollection of the attorneys at this time is not sufficiently clear for us to say as a matter of law that an error occurred here, however, we cannot find this possible error a basis for ordering a new trial.[3]

We have fully considered all of plaintiffs remaining contentions, and find them without merit. The district court's judgment is therefore affirmed.

---

**3.** We do note, however, that *Batson* challenges to the voir dire process should be conducted on the record to allow appellate review.