22-1348
*TransPerfect Global v. Lionbridge Technologies*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-four.

PRESENT:
> JOHN M. WALKER, JR.,
> DENNY CHIN,
> BETH ROBINSON,
> > *Circuit Judges*.

_____

TRANSPERFECT GLOBAL, INC.,

> *Plaintiff-Appellant*,

> v.                                                            No. 22-1348

LIONBRIDGE TECHNOLOGIES, INC.,
H.I.G. MIDDLE MARKET, LLC,

> *Defendants-Appellees*.

_____

FOR APPELLANT:                    JOHN GLEESON, Debevoise &
                                  Plimpton LLP, New York, NY
                                  (Martin P. Russo, Robert Sidorsky,
                                  Russo PLLC, New York, NY,
                                  Andrew J. Goodman, Malcolm
                                  Seymour III, Foster Garvey, P.C.,
                                  New York, NY, *on the brief*).

FOR APPELLEES:                    AARON MARKS, P.C., Kirkland & Ellis
                                  LLP, New York, NY (George W.
                                  Hicks, P.C., C. Harker Rhodes IV,
                                  Kirkland & Ellis LLP, Washington,
                                  D.C., and Kristin Rose, Kirkland &
                                  Ellis LLP, Los Angeles, CA, *on the
                                  brief*).

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on January 21, 2022, is **AFFIRMED**.

Plaintiff-Appellant TransPerfect Global, Inc. ("TransPerfect") appeals from the district court's grant of summary judgment to Defendants-Appellees Lionbridge Technologies, Inc. ("Lionbridge") and H.I.G. Middle Market, LLC ("H.I.G.") (collectively, "Defendants"). We assume the parties' familiarity with

the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

TransPerfect and Lionbridge are "the two largest companies in the language services industry," providing services such as translation and website localization. *TransPerfect Global, Inc. v. Lionbridge Technologies, Inc.*, 2022 WL 195836, at *1 (S.D.N.Y. Jan. 21, 2022). H.I.G. owns Lionbridge. *Id.*

In 2015, the Delaware Court of Chancery ordered the sale of TransPerfect and appointed a custodian (the "Custodian") to oversee the process. The Custodian had authority to establish the bidding process to be used in the auction for TransPerfect and to enter into confidentiality agreements with potential buyers. As part of this process, the Custodian established a virtual data room (the "Data Room") for due diligence materials and gave bidders—including H.I.G.—access to the Data Room once they signed confidentiality agreements. H.I.G. signed a confidentiality agreement that allowed it to access TransPerfect trade secrets and proprietary information for purposes of conducting due diligence for a potential acquisition, and forbade it from using the material for any purpose other than evaluating the acquisition.

3

H.I.G. retained McKinsey & Company to help it evaluate the potential acquisition.

During this evaluation period, "unredacted, customer-specific documents" were mistakenly uploaded to the Data Room. Appellant's Br. at 10. The Custodian replaced the files with redacted versions a few weeks later, but H.I.G. had in the meantime downloaded the unredacted files and sent them to McKinsey for further analysis. H.I.G. and McKinsey used the customer data as part of their due diligence process. TransPerfect contends the unredacted files were also provided to a financial analyst at Lionbridge, who separately evaluated them.

H.I.G. did not ultimately acquire TransPerfect—one of TransPerfect's original owners made the winning bid in the auction.

TransPerfect asserts Lionbridge subsequently used the information it acquired through the due diligence process to compete with TransPerfect. TransPerfect filed suit against Lionbridge and H.I.G. in 2019, alleging, as relevant

here, trade secret misappropriation in violation of the Defend Trade Secrets Act (the "DTSA") and New York law.[1]

In 2022, the district court granted Defendants' motion for summary judgment. *See TransPerfect Global, Inc.*, 2022 WL 195836, at *1. With respect to most of the documents TransPerfect identified in support of its claims, the court held that: (1) there was no evidence Defendants accessed them, or (2) the information was already available publicly. *See id.* at *5. Concerning the customer pricing information, the court concluded that TransPerfect did not present evidence that Defendants disclosed or used the information for competitive purposes in violation of trade secret misappropriation laws, *see id.* at *6–7, and that TransPerfect did not prove unjust enrichment or lost profit damages, *see id.* at *7–11.

We review a district court's grant of a motion for summary judgment without deference, drawing all inferences in favor of the nonmoving party—here, TransPerfect. *See, e.g., Proctor v. LeClaire*, 846 F.3d 597, 607 (2d Cir.

---

[1] TransPerfect also alleged violations of the Computer Fraud and Abuse Act, but those were dismissed at the pleading stage. *See TransPerfect Global, Inc. v. Lionbridge Technologies, Inc.*, 2020 WL 1322872, at *10 (S.D.N.Y. Mar. 20, 2020). Additionally, TransPerfect asserted claims for fraud, breach of contract, and unjust enrichment, but those were dismissed at summary judgment, *TransPerfect Global, Inc. v. Lionbridge Technologies, Inc.*, 2022 WL 195836, at *11–12 (S.D.N.Y. Jan. 21, 2022), and TransPerfect does not on appeal challenge the district court's rulings on those claims.

2017).[2]  "Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit."  *Id.*  At the same time, if a thorough review of the record with all inferences and ambiguities resolved in favor of the nonmovant turns up only evidence "so scant that a rational jury could not find in its favor," summary judgment is warranted.  *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

On appeal, TransPerfect argues that: (1) the district court improperly drew inferences in favor of Defendants in rejecting its claims for misappropriation of trade secrets based on pricing and revenue misappropriation, (2) the district court did not properly consider evidence Defendants misappropriated trade secrets related to TransPerfect's profit-driving business practices, and (3) the district court failed to properly credit evidence of damages contained in its expert report.[3]  For the reasons explained below, we disagree.

As to the customer revenue and pricing data, the Defendants do not argue that the information is not a trade secret.  *See* 18 U.S.C. § 1839(3) (defining "trade

---

[2] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

[3] TransPerfect does not on appeal challenge the district court's holding that its state law unfair competition claim "rises and falls" with its DTSA claim, *TransPerfect Global, Inc.*, 2022 WL 195836, at *11, and does not make any distinct state law claims.  We thus evaluate its claims on appeal pursuant to the DTSA.

secret"). Instead, the primary contested question on appeal is whether

TransPerfect mustered sufficient evidence to show that Defendants "used" to

their own benefit, or to TransPerfect's detriment, TransPerfect's customer

revenue and pricing information without TransPerfect's consent when

Defendants knowingly acquired the information "under circumstances giving

rise to a duty to maintain the secrecy" of the information. 18 U.S.C. §

1839(5)(B)(ii)(II). Defendants were entitled to use the information to evaluate a

potential auction bid for TransPerfect; the question is whether they also used it

for their own competitive purposes.

Both of TransPerfect's theories in support of its claim that Defendants used

its customer pricing and revenue information for Defendants' own competitive

purposes rely on speculative inferences that cannot carry TransPerfect's claim.

TransPerfect points to Lionbridge's fall 2017 bid on a project for one of

TransPerfect's major clients, Merck, as evidence of improper use of its pricing

and customer information. In particular, it reasons that (1) Lionbridge acquired

from the Data Room specific trade secret information about the prices

TransPerfect charged Merck in 2014 and 2015; (2) individuals at Lionbridge who

were involved in the 2017 bidding for the Merck project could have received the

trade secret information from the individuals who had direct access to it; (3) Lionbridge possessed information that TransPerfect's pricing generally remained stable over the years from 2014 to 2017; (4) in its last and final bid in the 2017 bidding process with Merck, offered within days of Lionbridge's failure to acquire TransPerfect in the auction, Lionbridge submitted a price that fell just below TransPerfect's 2014 and 2015 prices; and (5) this Lionbridge bid put competitive pressure on TransPerfect to reduce its own ultimately successful bid, thereby costing TransPerfect foregone revenues.

There are two main problems with TransPerfect's theory. First, TransPerfect asks us to infer, notwithstanding the uncontradicted sworn testimony of Lionbridge witnesses that the confidential information was not shared with the team that priced Lionbridge's bid on the Merck project, that Lionbridge used the confidential pricing information in setting its final bid simply because that (losing) bid turned out to be slightly less than TransPerfect's 2014 and 2015 rates. That inference is a stretch. *See Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude [summary judgment]").

Second, Lionbridge's third and final price offer in the Merck bidding process was *higher* than TransPerfect's *second* bid. *TransPerfect Global, Inc.*, 2022 WL 195836, at *9. The notion that TransPerfect lost potential revenues because it was forced to reduce its (winning) bid due to a bid from Lionbridge that was higher than the bid TransPerfect already had on the table doesn't make sense. If, as TransPerfect asserts, Merck asked TransPerfect to reduce its prices in a third and final bid in order to meet the bid of a competitor, the undisputed numbers undermine the inference that Lionbridge was that competitor.

TransPerfect's theory that Lionbridge used confidential trade secrets to undercut TransPerfect's prices to its client IQVIA likewise falls short. TransPerfect presented "whistleblower testimony" from a former Lionbridge employee that, after the auction, from late fall of 2017 through the fall of 2018, Lionbridge leadership took an unusual interest in bids to IQVIA, which Lionbridge believed to be TransPerfect's biggest client. Coupled with that witness's general testimony that after the auction Lionbridge "shifted its focus to toppling TransPerfect in the client accounts, industries and regions where Lionbridge understood TransPerfect was strongest," J. App'x 1028, this

9

testimony could arguably support an inference that Lionbridge sought to use confidential client pricing and revenue information for competitive purposes.

But TransPerfect's claim as it relates to the IQVIA account falters on the element of damages. TransPerfect could recover under the DTSA for actual losses it suffered as a result of Lionbridge's misappropriation, unjust enrichment, or a reasonable royalty. 18 USC § 1836(b)(3)(B). It has not sought to prove a reasonable royalty, and it has failed to connect its asserted damages to any instance in which Lionbridge's pursuit of IQVIA business translated into losses for TransPerfect or gains for Lionbridge.

TransPerfect ties its damages from Lionbridge's alleged efforts to lure away IQVIA's business to a rebate TransPerfect gave IQVIA in March 2018. TransPerfect points to testimony that it was pressured to increase its rebates because IQVIA said that TransPerfect was no longer competitive on price. But the only specific evidence TransPerfect identifies in support of its theory that *Lionbridge* created this pricing pressure, and did so on the basis of TransPerfect's trade secrets, is a TransPerfect bid to IQVIA in April 2018—a bid made *after* the March 2018 rebate that is the basis for TransPerfect's damages claim.

TransPerfect nevertheless argues that a factfinder could conclude that Lionbridge was responsible for the pricing pressures TransPerfect experienced with IQVIA in March of 2018. It contends that a factfinder could infer from the testimony of TransPerfect's "whistleblower" witness that Lionbridge made other proposals to IQVIA after the November 2017 completion of the auction and before March 2018 that Lionbridge failed to disclose to TransPerfect in discovery, and that the competitive pricing in Lionbridge's April 2018 bid was consistent with the pricing in the allegedly undisclosed pre-March 2018 bids. In so arguing, TransPerfect exposes its own inability to produce evidence of undercutting Lionbridge bids prior to the March 2018 rebates, and invites a factfinder to engage in two layers of speculation. That's insufficient to get to a jury.

Finally, we see no genuine dispute of material fact with respect to TransPerfect's argument that Lionbridge misappropriated trade secrets to replicate several of TransPerfect's business practices.

TransPerfect argues that, after the auction, Lionbridge adopted in its own operations four TransPerfect business practices, including TransPerfect's general approach to commissions, and the general framework of its project management software. TransPerfect does not claim that Lionbridge misappropriated its

11

proprietary software or stole its confidential business architecture. Rather, it contends that Lionbridge's consultant, McKinsey, identified the financial benefits of these TransPerfect business practices in the context of advising Lionbridge about the potential acquisition of TransPerfect. TransPerfect asserts that McKinsey relied on information from the Data Room in conducting its analysis and that, after the auction, Lionbridge relied on that analysis in deciding to modify its own business operations to harvest the efficiencies TransPerfect had attained through the specified business practices.[4] We are not persuaded.

The use of these generalized business practices is not a secret, let alone a trade secret. *See Kramer v. Secretary, U. S. Dep't of Army*, 653 F.2d 726, 729 (2d Cir. 1980) ("A trade secret, like any other secret, is nothing more than private matter; something known to only one or a few and kept from the general public; and not susceptible to general knowledge."); *Speedry Chemical Products, Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir. 1962) ("Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as [trade] secret.").

---

[4] TransPerfect's development of these arguments before the district court was thin, but sufficient to preserve the arguments for appeal.

To the extent TransPerfect argues that McKinsey relied on some trade secret data in identifying the efficiencies TransPerfect realized from certain business practices that are not themselves trade secrets, and Lionbridge, in turn, relied on McKinsey's analysis in deciding after the auction to adopt certain business practices that are not themselves trade secrets, the record evidence is insufficient to support this inference. In particular, there is insufficient evidence to permit a jury to find that Lionbridge decisionmakers had access to the McKinsey report when they implemented these business practices, or that the business practices Lionbridge implemented bore any connection to allegedly trade secret information. Thus, the district court did not err in granting summary judgment to Defendants as to these claims.

* * *

We have considered TransPerfect's remaining arguments and conclude they are without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13